## ATKINS v. SWOPE.

1. *Pleading and Practice:  Sale by plaintiff of attached property, no defense to the action.*

   A paragraph in an answer to an action of debt by attachment, that the plaintiff had obtained and sold the property attached, and praying for damages for its value, is not admissible, and should be stricken out.  Wanton or illegal proceedings under an attachment resulting in injury to, or loss of the attached property, although otherwise remediable, cannot be pleaded in defense of the action.

2. ATTACHMENT: *Attached property is in control of court; Plaintiff no right to it.*

   Attached property is within the control of the court; the plaintiff has no right to it as property, and to remove and sell it, with or without the consent of the attaching officer, is a contempt of court which a party commits at his peril.

3. SAME: *Power of court to remedy illegal disposal of attached property.*

   The court has the inherent power to compel the plaintiff to account for attached property converted by him, before giving judgment for him, or allowing execution; or if judgment be against him, may compel him to refund; and no material injustice of which the plaintiff could complain, would be done by including the matter in a verdict.

4. PRACTICE: INSTRUCTIONS: *General objection to several in gross.*

   A general objection to several instructions in gross, will not be entertained if any one of them be good, and is objectionable if all be bad. Their errors should be specifically pointed out.

APPEAL from *Monroe* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

### STATEMENT.

On the fourth day of December, 1878, Atkins sued Swope, in the Monroe Circuit Court, on a promissory note for $430, due December 1st, 1878, for rent of land for that year, and caused a specific attachment to be issued and levied upon cotton, produced on the land, to enforce his landlord's lien for the rent.   Swope answered in two paragraphs; in the first, by way of set off, "that Atkins was

indebted to him in the sum of $456 25, by note, made January 24, 1877, and due December 1st, 1878." In the second, "that he was damaged by the suing out of the attachment herein, to the amount of $200, in this; that by virtue of said attachment four bales of cotton of the value of $200, the property of the defendant, were seized by the sheriff and delivered to the plaintiff or his agent, who shipped the same beyond the limits of the State, and sold them without authority of law and without the defendant's consent, and the same, thereby, became lost to defendant,"

To this answer the plaintiff filed the following reply:

"Plaintiff, for reply, says that the note set up in this action as a set-off, was obtained from him by fraud and without any consideration.

"That defendant, who was then in possession of a plantation belonging to plaintiff, under a lease, a copy of which is herewith filed, falsely and fraudulently represented to plaintiff that he had cleared thirty-six and a half acres more land than he had been paid for; that he had had the land measured; that plaintiff lived some distance from there and knew nothing as to the amount of land cleared, and believing the representations so made, to be true, and the agreed price for clearing being $12 50 per acre, he executed said note for the clearing of said land and for no other consideration. That soon afterwards he discovered that said defendant had not cleared said land, nor any part of it, except about one acre; and as to the balance of said note ($443 75), there was no consideration whatever; and that defendant knew at the time of making said representations, that they were false and a fraud upon the plaintiff, and that he was getting said note for nothing."

2. "And for further reply, he says: That at the time said note was executed he, said defendant, had been cultivating some land belonging to plaintiff and doing some clearing for

him ; that each year defendant deducted from the rents a sufficient sum to pay for the clearing ; that for three years he paid $6 per acre rent, and two years $4 per acre ; that plaintiff knew nothing of the amount of land cultivated by defendant, or the amount he cleared, only from his statements ; that defendant lived on the place and plaintiff did not and was not familiar with it ; that at said pretended settlement the defendant represented that he had cleared thirty-five and a half more acres of land than he had cleared, and cultivated twenty-one and a half acres a year, for five years, less than he had cultivated ; and the said note was given to represent the balance that was due said defendant for said clearing that had not been paid for out of the rents ; that said defendant made said representation falsely and fraudulently, and with the intent to cheat and defraud plaintiff ; and plaintiff at the time relied upon them and executed said note ; when the truth was, as soon afterward discovered by plaintiff, that defendant had not cleared said land, and had kept back rent on said place for clearing, to the amount of $516 more than the clearing he did come to, at their agreed price ; and at the time said note was executed the said defendant had in his hands the sum of $516 to pay him for clearing, which he did not do, except about one acre ; and so he says that said note was executed without any consideration whatever, and was procured by the fraud of the defendant, and he demands that it be held for naught.''

Upon the trial the plaintiff produced in evidence the lease referred to in the reply ; the material part of which is, in effect, stated in the opinion of the court.

The plaintiff testified, in substance, that the defendant occupied the lands under the lease, cultivating the old and clearing new lands for five years. That when the note, pleaded as a set-off, was executed, he knew nothing as to the

amount of land the defendant had cleared or cultivated, except from his representations. He was, though, frequently upon the lands, between the date the clearing was finished and the date of executing the note; that each year for four years, the defendant deducted $125 from the rents to pay himself for clearing. That he and defendant had a settlement at the time the note was executed, and the defendant represented to him that he had cleared seventy-six and a half acres of land, and had cultivated fifty-seven and a half acres of old land, during the terms of his lease, and stated, at the same time, that Houser, the county surveyor, had surveyed the lands, and that according to his survey there was still due him $456 25, the amount of the note; and he relied upon the statement and executed the note; that soon afterwards he met Houser and asked him about the survey, and Houser told him he did not know the number of acres of cleared land, but had left a memorandum of it with Swope. He then told Houser he wanted him to make the survey, but Houser referred him to Walkup, who would soon be elected county surveyor, and was more competent to make it. Witness and defendant had agreed for Houser to make the survey, before he made it, and witness had been notified of the time the survey would be made, but could not attend, and sent word to Houser and Swope to go on and make it. He afterwards got Walkup to make it, who found that Swope had cleared only forty-four 81-100 acres, and deadened and chopped off some timber from eighteen acres, and it had grown up with briars and underbrush.

Walkup testified that he had made the survey since the date of the note; that there were forty-four acres and a fraction of the cleared land; eighteen acres deadened and grown up with briars so thick he could not get through it, and seventy-three and three-fourths acres of the old land. That he could easily distinguish the old land from the new

by the absence of timber and stumps from the old.   He had thoroughly studied surveying, had had many years practical experience at it, and a correct survey could not be made of land with irregular lines, without a compass.   He swore the chain bearers, and had a full set of instruments in making the survey.   That while making it Swope was present for a while, and then left.   He had no means of telling the old land from the newly cleared, except from appearance of the lands.   Atkins and James Seals had pointed out the lands cleared by Swope.   He was not certain that he could distinguish the land cleared by Swope, the first year of his lease, from the land previously cleared.

James Seals and J. T. Holloway testified that the eighteen acres were not in a state of cultivation; were covered with briars and underbrush, and did not appear to have ever been cultivated.   A part of it was good dry land.

Swope testified, for himself, that at the time the note was executed, he and the plaintiff had a settlement, and that he told the plaintiff that Houser had reported seventy-six and a half acres of land cleared by him, and the plaintiff thereupon executed the note.   That he had cleared some land that was wet, at the plaintiff's request, and against his own remonstrance.   Plaintiff said he would have it ditched, but he told him at the time it was impracticable to ditch it, and it never had been ditched and was not cultivated.   The first year of the lease he cleared not quite ten acres; the second year over ten, and the third all he did clear.   That plaintiff frequently visited the place after the clearing and before giving the note, and had ample opportunity to ascertain the amount cleared.   That there being an unsettled account between them for clearing, they had mutually agreed to refer it to Houser to survey the land and settle by his report; and upon the report of Houser of seventy-six and a half

acres cleared, being an excess of thirty-six and a half acres over what he had been paid for, plaintiff executed the note.

Houser testified of his survey the same as the other witnesses. He did not remember that he swore the chain bearers, but thought he did. He used no compass in making the survey. He only run around the cleared land and made no deductions for slash, uncleared land or anything else. He didn't know much about surveying; had never surveyed very much, and had never studied a thorough course, but that he could make an accurate survey when there were irregular lines, without a compass, if two of the lines were perpendicular to each other, as in this case. He was not a very skillful surveyor, but thought he could survey land correctly.

It was agreed that there were four bales of the cotton seized by the attachment, shipped and sold by the plaintiff, and were worth $164 68.

For the defendant the court gave the following

### INSTRUCTIONS.

1st. If the jury believe, from the evidence, that the clearing done by Swope was completed in the spring of 1876, that the plaintiff had ample opportunity to ascertain the number of acres that had been cleared, that the county surveyor, Houser, was employed by the parties to measure the cleared land, and that he did measure it and report the number of acres, upon which report the parties settled, and that the plaintiff made the note filed with the defendant's answer, without any representation by the defendant than that Houser had reported a certain number of acres, they will allow said note as a set-off against the plaintiff's claim, notwithstanding they may find that upon a subsequent survey there is a slight discrepancy between the number of acres, as reported by the surveyors.

2d.    The lease read in evidence does not oblige the defendant to keep in cultivation all the land which he may have cleared under the lease. If, therefore, the jury find that Swope cleared wet places, by plaintiff's direction, under protest, and afterwards failed to keep them in cultivation, because they were not tillable without being ditched, Swope is, nevertheless, entitled to the full contract price for said clearing.

3.    A doubtful or disputed claim is a sufficient consideration for a note. If, therefore, the plaintiff executed the note without any fraud or imposition practiced upon him, the defendant is entitled to recover the amount of it.

4.    If the jury believe, from the evidence, that the parties agreed upon thirty-six and a half acres as the quantity of land cleared by the defendant, and for which he had not been paid, and that they settled upon that basis without any false and fraudulent representations from the defendant, they will find for the defendant for the amount of the plaintiff's note, with interest, and the value of the cotton attached, with interest, less the amount of the defendant's note, with interest.

5.    When a party undertakes by his plea, to impeach the considerations of a note on the ground of fraud, he must prove the fraud. If, then, the jury find that no fraud was practiced upon the plaintiff in the settlement, which resulted in giving his note, they are instructed that the plaintiff's reply is not sustained by the evidence.

The plaintiff asked no instructions. One given by the court of its own motion, sufficiently appears in the opinion. The jury returned a verdict for the defendant for $200, including the value of the four bales of cotton, and the plaintiff, after motion for new trial overruled, filed his bill of exceptions and appealed.

*S. P. Hughes*, for appellant.

The note set up in the counter-claim was without consid-

eration and void ; even if there was no fraud, it was executed under a mistake as to material and important facts, and no settlement of disputed claims. A false and inaccurate survey is not binding, nor does it conclude parties who consent to have it made to ascertain the truth. A note, executed for a supposed debt, and it turns out nothing is due, is not a compromise of disputed claims. *Parsons on Cont., secs.* 441–2. *Ib. sec.* 438.

Misrepresentations may not imply fraud in fact, if made by mistake, but if material, and they go to the substance of a contract, they avoid it, whether caused by mistake, or are designed and fraudulent. 2 *Ib., sec.* 786, and cases cited, notes (g) and (h). *Ib., sec.* 779. They need not be made by the party benefitted. *Ib.*

Appellant had a right to rely on Houser's survey, (he being county surveyor), and upon his representations as to the quantity of land, and if he did so rely, as the proof shows, and settled by the same, there was a fraud in law, and avoids the note.

*W. W. Smith*, for appellee.

1. The affidavit for attachment was not positive, but made on information and belief, and should have been quashed. 24 *Ark.*, 235 ; repudiating the dictum in 5 *Ib.*, 522.

2. The bond was not conditioned, as required by *Act, Dec.* 28th, 1860, *Gantt's Dig., sec.* 4102 ; 28 *Ark.*, 466.

3. Was this defect amendable? *Gantt's Dig., sec.* 4616 ; 33 *Ark.*, 406.

4. This court will not disturb a verdict unless there is total lack of evidence to support it. 24 *Ark.*, 251 ; 31 *Id.*, 163.

5. Exceptions to instructions *in gross*, without specific

action of objections, will not be sustained, if any one is good. 28 *Ark.*, 8 ; 32 *Id.*, 223.

6.   The instructions, in detail, state the law fairly, and the jury were the judges of the conflict of evidence.

7.   The third instruction, good law.   21 *Ark.*, 69 ; 29 *Id.*, 131 ; 31 *Id.*, 222 ; *Fisher* v. *May*, 2 *Bibb*, 448 ; *Pitkin* v. *Noyes*, 48, *N. H.*, 294 *and c. c.* ; 14 *Serg. & R.* 425.

8.   Atkins had no right to rely on representations as to quantity of cleared land.   The land was there, and he had the same facilities for estimating it that Swope had.   The means of information being alike accessible to both parties, each must be deemed to have relied on his own judgment. 31 *Ark.*, 170.

9.   The burden was on appellant to establish the defense set up in the reply.   5 *Ark.*, 345 ; 6 *Id.*, 150 ; 7 *Id.*, 34 ; 11 *Id.*, 307 ; 18 *Id.*, 123 ; 21 *Id.*, 69 ; 22 *Id.*, 441 ; 25 *Id.*, 225 ; 31 *Id.*, 103.

10.   The exception taken below is waived, no specific objection being pointed out by counsel in his brief.   18 *Ark.*, 384.

EAKIN, J.   No question is made in this case, of the validity of plaintiff's note.   The whole controversy arises upon the note pleaded as a set-off, independently of which, there was, strictly speaking, no defense.

1. PLEAD-
ING:
Sale by
plaintiff of
attac h e d
proper t y,
no defense
in the ac-
tion.

So much of the answer as claims damages on account of the attachment, or the value of the cotton taken under it, which had been allowed to go into plaintiff's hands, was out of place as matter of defense, and might well, upon motion, have been stricken out.   An attachment has no bearing whatever upon the merits of a suit.   It is only ancillary to secure the fruits of any judgment to be obtained.

It brings under control of *the court*, not of the plaintiff, property, to be held for the purpose. The ownership is not changed. The plaintiff has no right to it in any case, as property, and to remove and sell it, with or without the consent of the sheriff, is a contempt of court, which a party commits at his peril. If the plaintiff fails in his action, the defendant is entitled to its return. In any case, if the attachment has been properly sued out, the Statute provides the mode of controverting the grounds, and obtaining satisfaction for damages. But wanton or illegal proceedings under an attachment, whereby the property has been injured or lost, although otherwise remediable, cannot be pleaded in defense of the action. The merits of that are not affected.

It is alleged in the answer, that the property had been lost by the plaintiff's conversion of it, whilst under control of the court, and that, without defendant's consent. Doubtless, the court, upon proper motion, might correct this wrong, and should, but it was neither matter of set-off, nor counter-claim, to be pleaded.

It is proper to add, as a corollary, that it was not correct practice in the court to direct the jury, trying the main issues, if they found for defendant to add to his note against plaintiff the value of the cotton seized, under the attachment, with interest," "less the amount of defendant's rent note, with interest." The jury should have been instructed to set-off the two notes, in such case, against each other, and to find accordingly for plaintiff or defendant, as the case might be. The validity of the set-off was the only issue properly made by the pleadings, and the only matter properly submitted to the jury. There had been no issue made, as provided by Statute, upon the *grounds* of attachment; no discharge of the attachment itself. Nevertheless, as the court might, by its inherent power, have

2. ATTACHMENT: Attached property in control of the court. Plaintiff no right to it as property.

3. ——: Power of court to remedy illegal disposal of attached property.

compelled the plaintiff to account for the property by him converted, before giving a judgment in his favor, or allowing execution; or in case of a judgment against him, might have compelled him to refund; no material injustice of which he could complain would be done by including the matter in a verdict. As the practice pursued was not made a special ground of the motion for a new trial, nor urged here as error, we will not notice it further. Compare *Holliday Bros.* v. *Cohen*, 34 *Ark.*, 707.

The gist of the reply to the set-off is, that the note was obtained by the fraud of defendant, in making false representations concerning the amount of the land which he had cleared, and the amount of the land which he had cultivated; in consequence of which, there was a partial failure of consideration. It is not a plea of total failure, nor of "no consideration." In each clause there is an admission of some small part of an intended consideration, enough, in the absence of fraud or mistake, to support the note in an action at law; at least to the extent, that it should not be considered *nudum factum*.

The substance of the reply is, that defendant was tenant of plaintiff under a certain lease, by which he was to pay a certain amount, per acre each year, for the old land in cultivation, and to clear more during the tenancy. The lease provided that he was to be paid twelve dollars and a half per acre for the new clearings, and to have the use of them for the first crop, without rent. It is alleged that defendant, for four years, retained out of the rents, each year, enough to pay for the clearing of ten acres, and afterwards, falsely represented to plaintiff that he had cleared, in all, seventy-six and a half acres. For the excess of thirty-six and a half acres the note was executed, making at the stipulated rate, $456 25. It is alleged that defendant had only,

in fact, cleared one acre in excess of that for which there had been former payments.

It is further alleged that defendant had actually cultivated more of the old lands than he represented to the plaintiff, to the extent of about twenty acres, and kept back the rents upon this excess from year to year, so that when the note was executed, he had already in his hands enough of plaintiff's money to pay for the additional clearing, save one acre. These representations also, are charged to have been false and fraudulent, and with regard to all of these, it is alleged that the plaintiff relied upon them, and was thereby induced to execute the note.

These were the issues presented. The jury, including the value of the cotton attached, about which there was no controversy, set-off the notes against each other, and rendered a verdict against the plaintiff below for the sum of $200 06.

The first ground of the motion for a new trial is, that the court erred in giving the 1st, 2d, 3d, 4th and 5th instructions; asked by defendant.

4. INSTRUCTIONS: General objection to several in gross.

The objection made to giving these instructions was general, embracing all of them in gross. It was not specific as to either or any of them, and directed the attention of the court to no particular error. We have, several times, held that objections of such a sweeping nature will not be considered here, if any of the instructions be good. It is not to be encouraged, even if they all be bad. It is manifestly due the court, as has been repeatedly said, that the attorney should "lay his finger" upon the errors complained of, and not compel the judge to seek them amongst all the matter included in a drag-net objection.

It would serve no useful purpose to discuss the instructions severally. It is enough to say, that, save with regard to the estimate of the value of the cotton in determining the

amount of the verdict, a point to which we have already alluded, they correctly present the law, as far as they go, and are applicable to the evidence. The gist of the reply was fraud, and they are directed, principally, to that point. If the plaintiff had desired others, particularly directed to the failure of consideration, independently of fraud, he might have asked them. The reply evidently rested upon the point of *fraudulent* concealments and representations, which were directly charged as the means by which the note had been obtained for a slight consideration. It was not charged that it had been executed under a *mistake* as to the quantities of land cleared and cultivated, nor does it appear that any such point was pressed under the vague allegation that, because of the alleged facts, the note had been executed without consideration.

The second ground is, error in the instructions given by the court, of its own motion. It is contended that its effect was to advise the jury " that the only real issue to be determined was, whether there was any fraud in the transaction or not." If such had been its effect, it would not be clearly erroneous, in view of the pleadings, and in the absence of any request on the part of plaintiff to modify the instruction so as to present to the jury any point, except fraud, upon which he relied. But we do not understand it as having such limiting effect. It, too, announces the law correctly, as far as it goes. The parties had agreed, beforehand, to settle in accordance with a survey of the lands, to be made by the county surveyor, Houser. He made the survey, and they did settle by his report; the plaintiff, thereupon, executing the note in question for the clearing. A subsequent survey, made by a different surveyor, differed from that of Houser, as to the quantity of old land in cultivation when the lease was made, and also as to the quantity of land cleared by defendant.

The court instructed the jury " that the law would presume that the county surveyor, in discharging his official duty, would proceed in the manner prescribed by law ; and if the jury find that the county surveyor failed to make such survey in a legal manner, and that defendant knew that fact, and concealed that fact from plaintiff, and thereby induced him to give his note, it would be a fraud upon the part of defendant ; unless the plaintiff had equal opportunity to know of such neglect."

This was in the appellant's favor. If there was any other aspect of the case made by the evidence, which the plaintiff desired to have hypothetically presented to the jury, he might have asked it. The instruction was substantially correct. The plaintiff asked none.

The third ground is, that the verdict was contrary to the law and the evidence. The burden was upon the plaintiff to show, by evidence preponderating with the jury, that the note set-off was void, or subject to abatement as to amount. The proof as to fraud failed wholly. The discrepancy between the two surveys is considerable, but there are several reasons why the jury may have failed to place such implicit reliance upon the second, as to wholly overthrow that of Houser, and nullify the agreement of the parties to settle by it. For instance, it may be noticed that the second surveyor, Waldrup, although evidently skillful, and accurate in his lines and calculations, much more so than Houser, made his survey long after the lease had been executed, and confesses that he was not able certainly to distinguish between the lands in cultivation when the lease was made and those cleared the first year afterwards. This distinction was very important.

The jury were the judges of the weight of the evidence, and its effect, taken altogether ; and were not satisfied that the plaintiff had well sustained the burden in making out his

case. We cannot say their verdict was contrary to the evidence or the law. Upon the whole case, it seems that it does substantial justice. The plaintiff owned the land, and, as the evidence shows, was frequently upon it. It was his interest, as well as his duty to himself, to take notice and form some estimate of the amount of land for which his tenant was required to make payment, as well as the amount of clearing for which he was himself required to allow compensation. It is important that men should be enabled to rely, with some reasonable confidence, upon their adjustments with each other of business matters. If, as seems plain, there was no fraud in the settlement, and he relied too readily upon the judgment and capacity of Houser, and closed his business with his tenant by note, he ought not, in fairness, to repudiate his act, and at a later day subject his tenant to a stricter account, without clear, decided proof of fraud or mistake.

The objection to the verdict, on an account of excess, made the last ground for the motion for a new trial, is not well taken.

Admitting the charge for cotton at its agreed value, calculating interest upon that from the time of seizure, and upon both notes, at 6 per cent. up to the time of the verdict, the amount of the balance accords with that found.

Affirm the judgment.