BAKER v. STATE.

Opinion delivered February 10, 1908.

1. WITNESS—IMPEACHMENT OF ACCUSED—CONTRADICTORY STATEMENT.—Where defendant filed an application for continuance on account of the absence of a certain witness, in which he alleged what the witness would swear if present, which application was refused, and the witness subsequently appeared and testified somewhat differently from defendant's statement in the application, it was error to permit the application to be read for the purpose of impeaching defendant if such application did not conflict with defendant's testimony. (Page 303.)

2. EVIDENCE—DYING DECLARATION—EXPRESSION OF OPINION.—It is not admissible in a murder case to prove as a dying declaration that after he was shot decedent remarked, "I would not have done my fellow man that way," the remark being an expression as to how he considered the act of the defendant in shooting him. (Page 303.)

3. SAME—RES GESTAE.—To authorize the admission of testimony in a murder case as part of *res gestae,* it must be shown that it stood in such immediate causal relation to the killing as to be an emanation thereof. (Page 304.)

Appeal from Baxter Circuit Court; *John W. Meeks,* Judge; reversed.

*Horton & South,* for appellant.

1. It was error to permit the State, over the objection of the defendant, to read a part of his motion for continuance to the jury. If introduced either for the purpose of showing that defendant had committed the crime of perjury in making oath to the motion, or for the purpose of impeaching the testimony given by him on the trial, it was clearly inadmissible. 45 Ark. 165; 38 Ark. 221; Kirby's Dig. § § 6173, 6120. There is no conflict here between the statements in the motion and the testimony of the witness, as in *Weaver* v. *State,* 83 Ark. 119.

2. There was prejudicial error in permitting witnesses Ella Noe and Laurel Talbert to testify to the declaration of deceased, "I would not have done my fellow man that way." It would not have been competent testimony if given by the deceased himself under oath when living, and cannot be justified as a dying declaration. Wharton on Homicide, 3 Ed., § 627; 63 Ark. 382; 52 Ark. 387.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee; *Frank Pace,* of counsel.

1. Defendant was asked if he did not set up in his motion for continuance what Will Gillespie would swear to if present at the trial, to which defendant answered, "I do not remember whether I did or not." It was competent to introduce the motion to show that he did know whether or not he had set up what Gillespie would testify. It was also competent to show that defendant had sworn recklessly, carelessly or falsely at one time or the other. By testifying defendant placed his character as a witness in issue, and it was competent to introduce the motion to go to his credibility. 83 Ark. 119.

2. There was no error in allowing witnesses Mrs. Noe and Laurel Talbert to testify to the statement of the deceased. It was a part of the *res gestae.*

BATTLE, J. The grand jury of Baxter County, at the March, 1907, term of the Baxter Circuit Court, indicted Austin Baker for murder in the first degree, committed by killing W. F. Noe on the 8th day of February, 1907. He was tried and convicted of murder in the second degree.

The defendant moved for a continuance on account of the absence of Will Gillispie, and in his motion stated that Gillispie would swear that he is acquainted with the defendant and W. F. Noe; that Noe, within a few hours prior to the time he was shot and killed by the defendant, told witness that he was going to kill him (Baker); that he was planning to entice him into his office to get a drink, and had sent for the whisky for that purpose, and that he was going to shoot him with a pistol, and at the same time showed him (witness) a blue-barrel pistol, and stated he "would cut the heart out of" the defendant "if he failed to get a chance to shoot him;" that witness at the time

thought Noe to be drinking, and that he was merely bluffing; "that he sent word to defendant to this effect, but not until recently."

The motion was not acted upon by the court, the witness having appeared.

The facts as proved by the evidence adduced in the trial were, in part, as follows: On the night of the killing the defendant and his cousin, Ed. Baker, concluded to get some whisky before going to a dance that was to take place that night. They ascertained that Noe had the whisky. They met with Noe, Tom Lewis, Jabe Hart, and Sid Noe, in the rear room of W. F. Noe's office to get the whisky. Defendant and his cousin Ed paid for their part. W. F. Noe and Tom Lewis were under the influence of whisky. A friendly discussion arose after the defendant had prepared the drinks, over the question as to who gave away the most whisky. W. F. Noe became angry with the defendant, cursed and abused him. Noe attempted to use a knife, but bystanders prevented. Defendant left the office, procured a gun, loaded it, and told parties that he had been invited into Noe's office and unjustly abused, and declared his intention to defend himself. He said he and his cousin Ed were going to a party and ride Ed's horses. To get the horses, it was necessary for him to go through the street by Noe's office. He went this street, and when in front of Noe's office he called his cousin Ed, and Ed went to him in the street and attempted to convince him that Noe was pacified and to persuade him to go into Noe's office and to drink of the whisky that he had paid for. Convinced by Ed that the trouble was over, he started to set his gun down, when Noe went to the door and cursed and abused him unmercifully, the defendant returning epithets. Defendant retreated, and Noe followed, and defendant shot and killed him.

Will Gillispie, a witness in behalf of the defendant, testified, in part, substantially, as follows: Had several conversations with deceased in his office in which the Baker boys were mentioned, and Austin in particular. On one occasion he was telling me of some trouble he had had with Austin, and said that he hated him worse than he did a ———— snake or a negro. At another time he asked me if I ever drank anything, and said if I did he would get some liquor, and get the boys off and beat

————— them. He asked me if I would not be in on that? And I told him there might be too many of them for us, and he said: "Couldn't you gun them?" He said that if he ever got into it with Austin Baker, like he had once before, he would kill him."

The defendant, Austin Baker, testified in his own behalf, saying many things favorable to himself. In his cross -examination the plaintiff asked if he had not sworn to and signed the motion for a continuance on account of the absence of Will Gillispie, and he said he had, but he did not remember whether he stated in the motion what Will Gillispie would swear if present. The court, over objections of the defendant, thereafter allowed plaintiff to introduce and read as evidence in the trial so much of the motion for a continuance as is set out in this opinion. In so doing the court committed a prejudicial error. The defendant stated only what the witness would swear if present, and not that the facts stated in the motion were true. He meant only that he believed the witness would swear to the effect stated. In the nature of things he could not know, but believed what he (witness) would swear. The introduction of this motion for a continuance as impeaching testimony was calculated to cause the jury to believe that it was introduced for the purpose of showing that defendant had sworn falsely, and that he had done so because Will Gillispie had not sworn as defendant stated he would in the motion, and that defendant was not altogether truthful and worthy of belief, and to impair, if not destroy, the force and effect of his testimony. The motion in this case is unlike that filed in *Weaver* v. *State,* 83 Ark. 119. The latter motion conflicted with the testimony of the defendant, Weaver, and was admitted to impeach him. As the motion in this case did not conflict with the defendant's testimony, it was not admissible as impeaching testimony.

The court, over the objection of the defendant, permitted Ella Noe, the widow of the deceased, to testify in the trial that W. F. Noe said to her after he was shot, "I would not have done my fellow man that way;" and permitted Laurel Talbert, over the objection of the defendant, to testify to the same effect. This remark of the deceased was an expression as to how he considered the act of the defendant shooting him, of his opinion, and,

although a dying declaration, was not admissible as evidence. *Jones* v. *State*, 52 Ark. 345, 347; *Berry* v. *State*, 63 'Ark. 382. : ., The remark was not shown to be so near the shooting as to constitute a part of the *res gestae*. To authorize the admission of such testimony as *res gestae*, it must be shown that it stood in such immediate causal relation to the shooting as to be an emanation thereof. It must be shown to be a part of the *res gestae* before it can be admitted as such, and that was not done. *Kennedy* v. *State*, 85 Ala. 330. As to what is necessary to constitute the *res gestae*, see *Little Rock Traction & Electric Company* v. *Nelson*, 66 Ark. 494.

Many other questions are mentioned in the briefs of counsel; but as they are not liable to arise in a new trial, we do not notice them in this opinion.

For the errors indicated the judgment of the circuit court is reversed, and the cause is remanded for a new trial.