Moss *v.* STATE.

4371                                                    185 S. W. 2d 92

Opinion delivered February 5, 1945.

*O. James Fergeson, Carroll Johnston, Bob Bailey* and *Bob Bailey, Jr.,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

*Charles L. Farish, amicus curiae.*

McFADDIN, J. This is an appeal from a conviction of manslaughter. Appellant, Riley Moss, was city marshal of Danville, Yell county, Arkansas. The deceased, Floyd O. Havner, a native of Yell county, was a soldier in the United States Army. About 9:00 a.m. on August 12, 1944, and while enroute to a new military station, Havner arrived in Danville to see his wife. Learning that she was visiting her mother in Oklahoma, he intended to take the 5:00 p.m. bus; and was killed by appellant at 4:00 p.m. on the main street of Danville. The record is voluminous. Thirty-five witnesses testified, and many of them were eye-witnesses. The motion for new trial contains sixty-seven assignments, which we group in convenient arrangement.

I. *Regularity of the Information and Sufficiency of the Evidence.* The information is in proper form, and charges Riley Moss with the crime of murder in the first degree, giving the date, place, name of deceased, manner of killing; alleging felonious intent, malice, deliberation, and premeditation, in violation of the peace and dignity of the state of Arkansas. The information is in full compliance with §§ 22 and 23 of Initiated Act No. 3, adopted at the 1936 General Election (see §§ 3851-52, Pope's Digest). It also conforms to Act No. 359 of 1943, and Constitutional Amendment No. 21, allowing prosecuting attorneys to proceed by information.

According to the witnesses for the state, appellant pursued Havner, and shot him while he was hurriedly retreating. According to witnesses for the appellant, Havner was intoxicated, and had his hand in his right pocket, and appellant was in the act of arresting him when Havner withdrew his hand from his right pocket, and appellant fired, thinking a gun was being drawn. The evidence shows Havner was without any weapon, unless he had a rock in his pocket. Without detailing the evidence, we have concluded that the conflict in testimony was a question for the jury, and there is ample evidence to sustain the verdict.

II. *The Jury Panel.* The homicide was committed in Yell county, Arkansas, on August 12; and on August 28 the appellant secured a change of venue to Conway County, and the case was set for trial for October 9. On the last-mentioned date, appellant moved to quash the jury panel; and assigns as error the overruling of that motion. In his motion to quash, appellant alleged that the regular term of the Conway circuit court convened by law on October 2; and that on August 29 (and after change of venue had been granted) the jury commissioners were appointed; that they knew when they selected the jury panel that this case was for trial in Conway county. Chapter 95 of Pope's Digest relates to the selection of the jury panel. No defect is alleged in the selection of the jury commissioners or their report, nor is there any allegation of any misconduct by the commissioners, or of unfairness in selecting the jury panel. No case from this or any other jurisdiction is cited to sustain the appellant's contention. The mere fact that the jury commissioners might have known what cases would come before the court during the term is no cause for quashing the panel.

III. *Copy of the Travel Order of the Soldier.* Since the deceased was a soldier, his body and all personal effects were delivered to the military authorities. Major David R. Lynch, of the Military Intelligence Section of Camp Chaffee, Arkansas, received the body and effects

from the coroner and undertaker at Danville. Major Lynch testified that the deceased had on his person certain travel orders from the United States Army, and that these orders were forwarded by Major Lynch to the headquarters of the Eighth Service Command at Dallas, Texas, as required by military procedure; but before forwarding the papers, Major Lynch made a certified copy of the travel orders, and at the same time certified the copy as a true copy. He so testified in person before the jury in this case; and the certified copy that he made was introduced in evidence. The appellant urges that the copy so made was not admissible because there was no solemn form of certificate on the copy. It merely said: "a true copy . . . David R. Lynch, Major, Infantry."

We see no merit in appellant's contention in this assignment. The travel order taken from the body of the soldier was in the possession of Major Lynch as the proper custodian under military authority at the time he made the copy. He personally testified that it was a true copy; and he was before the court in person, and subject to cross-examination. His testimony was the certification. The travel order on the body of the soldier was outside the jurisdiction of the court when Major Lynch testified at the trial, and the sworn copy became the best evidence. 32 C. J. S. 759. Furthermore, Major Lynch testified to the copy as an examined and sworn copy. 32 C. J. S. 520; 20 Am. Juris. 875-6; 22 C. J. 821.

IV. *Res Gestae.* The appellant offered to prove that about five minutes after the killing, and in answer to an inquiry, he told a witness: "I shot that fellow—I had to kill him—he threw something at me." This was offered as a part of the *res gestae,* and was ruled inadmissible; and that ruling is assigned as error.

In *Walker* v. *State,* 138 Ark. 517, 212 S. W. 319, Mr. Justice Wood, in discussing a statement claimed to be *res gestae,* used the following language apposite to the case at bar:

"This declaration by the appellant was not a spontaneous emanation growing out of the act of stabbing Bryant. The fight was then over and although but a few moments had passed, appellant had had time to reflect and that declaration under the circumstances was in the nature of a self-serving declaration and it could not be properly considered as a part of the *res gestae*. '*Res gestae* are the acts talking for themselves, not what people say when talking about the act. In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness seeking to manufacture evidence for itself.' 1 Whart. Ev., § 259; *Elder* v. *State,* 69 Ark. 648, 65 S. W. 938, 86 Am. St. Rep. 220; *Baker* v. *State,* 85 Ark. 300, 107 S. W. 983; *Spivey* v. *State,* 114 Ark. 267, 169 S. W. 949." See, also, *Johnson* v. *State,* 179 Ark. 274, 15 S. W. 2d 405. The statement offered by the appellant was a self-serving declaration, and the trial court was correct in excluding it.

V. *Other Rulings on Evidence.* Several other assignments in the motion for new trial relate to admission or exclusion of evidence. One concerns the autopsy report by the army officer. The officer who performed the autopsy testified in person, and his qualifications were admitted by the appellant. Another assignment concerns a question as being leading, while two other assignments relate to general objections to the admission of evidence. We have carefully considered these assignments, and find them to be without merit.

VI. *Instructions.* The remaining 57 assignments in the motion for new trial relate to the giving or refusing of instructions. The court gave the jury 43 instructions covering every phase of the case, and the appellant objected to each. The appellant requested thirteen instructions, each of which was refused by the court. Then there was a special ruling on the subject of "threats," and the ruling is assigned as error. This accounts for the 57 assignments. It would unduly prolong this opinion to set out each of the instructions given which is

complained of, or the requested instructions which were refused. We have studied all of the instructions, and find no error in any that were given; and find that the trial court was correct in refusing each of the denied instructions, either because it was covered by instructions given, or because it failed to be a correct statement of the law, or failed to refer to issues germane to the case.

Finding no error, the judgment is in all things affirmed.