PENDLETON *v.* STATE.

4455                                    204 S. W. 2d 559

Opinion delivered September 29, 1947.

Rehearing denied October 27, 1947.

*Jeta Taylor* and *Batchelor & Batchelor,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice.   Leon Pendleton was convicted of burglary, and sentenced to two years in the penitentiary; and he has appealed.   The motion for new trial

contains 16 assignments, which we group and discuss in suitable topic headings.

I. *Sufficiency of the Evidence.* The evidence, viewed in the light most favorable to the State, tends to show the following facts: John Harbottle owned a liquor store in Altus, Franklin county. The store was in a small brick building which faced south, with one door on each of the south, east and west sides. There was a partition in the building; the liquor store was in the south room, and the north room was a bedroom occupied by E. W. Sublett, who operated the liquor store for Harbottle, and who was sleeping in the north room on the night in question. Some time between 2:00 a. m. and 3:00 a. m. on February 3, 1947, two men attempted to enter the liquor store. During the time the burglars were attempting to force entrance, Sublett was awakened by their noises; he loaded his gun with buckshot, and awaited their possible entrance. Sublett had opportunity to see the burglars, because of the moonlight, their flashlight, the street lights, and also the lights from two passing cars. The burglars tried the east door and then the south door before they succeeded in breaking open the south door. One of the burglars came into the store, and the other, remaining on the outside, said to his companion: "If you find anybody in there, knock them in the head and kill them." The burglar on the inside discovered Sublett and started toward him, and Sublett shot him—a man named Harris. The other burglar ran away, and is claimed to be the defendant, Leon Pendleton.

When Harris was shot, he fell to the floor, where he remained until a physician had him removed by ambulance, a few hours later, to Fort Smith. Harris died in a hospital in that city. Immediately after shooting Harris with the shotgun, Sublett, by firing a pistol, awakened Harbottle, who lived near by, and who summoned the officers. A small crowd soon gathered. While Harris was on the floor, he was heard to exclaim, "Come and get me, Leon"; and, again, "Leon, Leon, come and get me." These exclamations were held incompetent, and will be discussed in topic II.

Leon Pendleton was arrested the same day in Van Buren, where he lived. He was charged with burglary of the Harbottle store, and his plea of not guilty included the defense of an alibi. Sublett positively identified Pendleton as the companion of Harris in the burglary. Other witnesses supported Sublett by testimony tending (1) to identify Pendleton; (2) to place him near the liquor store the night in question; and (3) to show that he left the scene in haste. Without detailing all the evidence, we have sketched enough to show that a case was made for the jury.

II. *Harris' Exclamations.* In his opening statement the prosecuting attorney told the jury that Harris, while lying on the floor after being shot, called "Leon, Leon, come and get me." Pendleton's attorneys objected to the statement, and moved the court to declare a mistrial. The record shows this to have occurred:

"Mr. Batchelor: I move the court to discharge the jury for that statement that . . . at the time that the sheriff arrived at the scene of the robbery that Harris continued to call for 'Leon' to which statement the defendant now objects.

"The Court: Objection sustained and the jury admonished not to give that any consideration.

"Mr. Batchelor: Save our exceptions. Defendant contends that this does not remove the error and at this time asks the court to declare a mistrial and discharge the jury. Now I want the same objection to what Sublett said. We object to the statement of the prosecuting attorney that Sublett would testify that after the shooting or about the time of the shooting, the deceased, Harris, called for Leon to come and get him or words to that effect.

"The Court: Overruled. I don't believe I will admonish the jury at this time. After consideration, motion sustained and the jury is admonished not to give consideration to it. Gentlemen of the jury, there has been some statement inadvertently made not in response to the

question as to what Mr. Harris said. You will not give that consideration, gentlemen, as to what he said down at the place or on the way to the hospital."

It will be observed that the trial court admonished the jury to give no consideration to the exclamations made by Harris. But the appellant contends that the words of the prosecuting attorney could not be erased from the minds of the jurors; and claims that a mistrial should have been ordered under the authority of *Smith v. State,* 205 Ark. 1075, 172 S. W. 2d 248.

The situation in the case at bar is not identical to that in the Smith case. The distinction is this: In the Smith case the prosecuting attorney, in his opening statement and over the defendant's objections and exceptions, was permitted by the court to detail an alleged confession which was later held to be inadmissible. We said the error in allowing the confession to be detailed to the jury was not cured by the admonition of the court given the next day. In the case at bar the prosecuting attorney, in his opening statement, told the jury of the exclamations and remarks that Harris was alleged to have made; but just as soon as the defendant objected to the statement of the prosecuting attorney, the court told the jury to disregard the statement. Thereafter when any witness attempted to tell of Harris' exclamations or remarks, the court promptly stopped such witness, and directed the jury to disregard any such testimony. We therefore hold that in the case at bar the trial court did not abuse its discretion in refusing the defendant's motion for a mistrial.

A majority of the Court thinks the dying man's calls were a part of the *res gestae* and therefore testimony relating to them was admissible. What Harris exclaimed *at the time of the shooting* might have been such a spontaneous exclamation as to have been a part of the *res gestae* (see *Walker v. State,* 133 Ark. 517, 212 S. W. 319, and *Moss v. State,* 208 Ark. 137, 185 S. W. 2d 92); but we are not required to decide that issue, since the trial court excluded *all* exclamations made by Harris after Sublett shot him.

III. *The Jury's Recommendation of a Suspended Sentence.* After the jury had deliberated for some time the jurors returned into the court, and the following transpired:

"Juror: Judge, your honor, I am foreman. We want to ask you a question. If we find the man guilty, can we recommend a suspended sentence?

"The Court: You may make whatever recommendation that you see fit.

. . . . .

"The jury then retired to consider further their verdict. Immediately upon their retiring the following transpired:

"Mr. Batchelor: I want to object to the statement that the court made to the jury, then I want to request the court to state to the jury whether or not he will follow their recommendation. I ask the court to tell the jury that the court is not bound by their recommendation.

"The Court: That will be overruled for this reason: I may want to make an investigation as to the life that this man has lived in determining what I should do about it. I don't know what that investigation will reveal. That is overruled because I don't know what I will do after I learn what I may do about it.

"Mr. Batchelor: Save our exceptions."

The defendant most vigorously argues that the trial court erred in all of the foregoing copied proceedings; but we hold that the appellant's assignment is unavailing. The statement of appellant to the court, as just copied, covered three points in one statement. We proceed to list each of the three points, and discuss them, to-wit:

First, appellant objected to the court telling the jurors that the jury could make a recommendation of a suspended sentence. The court's action in that regard was not an error, because the statute (§ 4028, Pope's Digest) says the jury may ask the court about a point of law; and the statute (§ 4053, Pope's Digest, as amended

by Act 262 of 1945) says the court may suspend a sentence. Furthermore, we held in *Jones* v. *State,* 161 Ark. 242, 255 S. W. 876, that it was proper for the court to answer questions of the jury concerning the nature and place of confinement. That holding applies here.

Second, appellant asked the court to tell the jury whether the court would follow the jury's recommendation of a suspended sentence. The court was correct in refusing that request; it would have been error for the court to tell the jury that its recommendation would be followed. In *Bethel* v. *State,* 162 Ark. 76, 257 S. W. 740, 31 A. L. R. 402, the trial court told the jury under what conditions the sentence would be suspended; and that action was held to be reversible error.

Third, appellant asked the court to tell the jury that the court was not bound by any recommendation. That request was proper; and if that request had stood alone and severed from the other two points, then it would have been error for the court to refuse that request. But the correct request was coupled with (1) an invalid objection and (2) an erroneous request, as previously shown; and with the record in such condition, appellant is in no attitude to complain of the court's ruling.

In *Ward* v. *Sturdivant,* 86 Ark. 103, 119 S. W. 1168, in considering an objection *en masse* to instructions, we said: "The appellant, the record shows, 'excepted to all of said instructions, but the court gave same over the objections' of appellant. This presents no specific objection to any one of the instructions, and we find that some, if not all, of them are correct. *Atkins* v. *Swope,* 38 Ark. 528; *Neal* v. *Peevey,* 39 Ark. 337; *Quertermous* v. *Hatfield,* 54 Ark. 16, 14 S. W. 1096; *Fordyce* v. *Russell,* 59 Ark. 312, 27 S. W. 82; . . ." To the same effect, see, also, *Owens* v. *State,* 86 Ark. 317, 111 S. W. 466; *Tiner* v. *State,* 109 Ark. 138, 158 S. W. 1087; *Graham* v. *State,* 197 Ark. 50, 121 S. W. 2d 892; and *Massey* v. *State,* 207 Ark. 675, 182 S. W. 2d 671.

The rationale of the holding in those cases applies with equal force to the case at bar. The appellant in one

request joined three points, two of which were wrong. In joining the three points in one request, the appellant took the risk of the error in any of them. His exception to the court's ruling was an exception *en masse*, since his request was incorrect on two of the points as we have shown.

*Conclusion*: The jury returned a verdict of guilty, and fixed the punishment at two years in the penitentiary, and recommended a suspended sentence. It appears from the judgment that the court, after investigation, refused to suspend the sentence. The court had this power under the statute (§ 4053, Pope's Digest, as amended by Act 262 of 1945). We have examined all the assignments and find no reversible error. The judgment is affirmed.