Andrews *v.* State.

4816                                    282 S. W. 2d 592

Opinion delivered October 10, 1955.

*W. S. Atkins,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Asst. Atty. General, for appellee.

Lee Seamster, Chief Justice.    On information, appellant was charged with the crime of arson.    It was alleged that appellant did unlawfully, maliciously and feloniously set fire to and cause to be burned a nursing home, the property of Mrs. Jewell Massengill, located at 803 East Division Street in the City of Hope, Arkansas. Upon trial in the Hempstead Circuit Court appellant was convicted of the crime of arson and punishment was fixed at two years in the State Penitentiary.    From the judgment on this verdict comes this appeal.

The appellant lists three points for reversal of the trial court's verdict, they are: (1) insufficiency of the

evidence; (2) the statement of the court to the jury with respect to suspended sentence; and, (3) the court grossly abused its discretion in not suspending sentence in keeping with its statement to the jury.

Initially, the appellant contends there is insufficient corroborative evidence to sustain his conviction of the crime of arson. He alleges that the testimony of record, when given its strongest force for the State, is only sufficient to raise a suspicion of guilt. It is further alleged that the testimony is as consistent with appellant's innocence as with his guilt and, therefore, is not sufficient corroboration of the accomplices.

In this case, the State relied heavily upon the testimony of the accomplices. They were, Mrs. Jewell Massengill, the owner of the nursing home that was destroyed by fire, her son Bob and Sam Sampson, an employee of Mrs. Massengill's.

Mrs. Jewell Massengill testified as follows: that she and appellant discussed the burning of her nursing home sometime in September of 1954, when he came to her home in response to her request, and that appellant said he and his company were in that business; that appellant told her that he would do the job for a price of $3,500—$750 of this amount to be paid in advance as a down payment; that she saw appellant several times after the first meeting and upon inquiry she was told by appellant that she could take some of the furniture out of the house before the burning; that she later took some of the furniture out of the nursing home and stored it at Prescott, Arkansas; that she went to Texarkana, Arkansas, with the appellant to look at some buildings that had been burned, to prove to her that it could be done; that she and appellant made a trip to Texarkana about two or three weeks before the fire, they looked at a tourist court; that she issued a $750 check, payable to cash, cashed it at First National Bank of Hope and gave the money to the appellant. She also testified that she had in force $25,000 worth of fire insurance on the nursing home and contents, which she had obtained from Leonard

Ellis, and she purchased an additional $15,000 fire insurance policy from the appellant on the home and contents shortly before the fire.

Bob Massengill testified to the following: that he was the son of Mrs. Jewell Massengill and that he knew about the storage of his mother's furniture in Mrs. Dudney's place in Prescott, Arkansas; that he and his brother-in-law moved said furniture to Weatherford, Texas; that Sam Sampson helped them move the furniture and that the furniture was moved at night; that he knew about the fire and the reason for hiding the furniture.

Sam Sampson, an employee of Mrs. Massengill's, testified to the following: that he took the furniture to Mrs. Dudney's place in Prescott, Arkansas; that he had made a confession to police officers to the effect that he knew about the fire and that he was under indictment and was awaiting trial; that he recognized the appellant and that he had seen the appellant several times in the past when he was visiting Mrs. Massengill at her home.

Mrs. Callie Dudney, a witness, testified to the following: that Mrs. Massengill stored some of her household goods in her house shortly before the fire and that appellant visited her home about three times after the fire; that at one time when shown the household goods of Mrs. Massengill's, he stated, "I told her she could move some of it, but I didn't tell her she could move all of it"; that appellant said that he thought she had better sense than to move that much; that after the fire the appellant returned to have her sign a statement that his lawyer had prepared, when she refused he returned again at a later date to try to secure from her a written statement, in her own words, to the effect that the appellant had nothing to do with the fire. She also testified that appellant in the past had tried to sell her a fire insurance policy and a box of matches; that she went to Texarkana with the appellant and Mrs. Massengill to look at a tourist court which Mrs. Massengill wanted her to operate

if she bought it, but she told her that she couldn't because of her own business.

Mr. Herman Morris, a witness, testified to the following: that he owned and operated the Morris Motel, a tourist court on East 9th Street in Texarkana; that the appellant and two women were in his place of business in October, 1954, and the appellant held himself out as a prospective buyer for the Motel; that he recognized Mrs. Massengill as one of the women and that she was going to help appellant buy the Motel or was interested in forming a partnership with appellant for the purchase of the Motel; that he told them that he wanted $75,000 for the Motel—$35,000 of this sum as a down payment.

Mrs. Herman Morris testified that appellant was at the Motel about September 22, 1954, and said that he liked the place and was going to try to make a deal for the purchase of it. She also stated that she saw appellant and the two women in the Motel in October, 1954, when they talked to her husband.

Lyle McMahan, a neighbor of the appellant, testified that before the fire the appellant tried to sell him an insurance policy on some of his trucks and that he replied that he already had them insured for more than they were worth; that when appellant told him that he could get a man to burn the trucks, he replied that he was not interested. He further testified that appellant saw him some two or three days later and asked him if he had changed his mind, he stated that he had not changed his mind.

Mr. Leonard Ellis, a witness, testified that the fair market value of the nursing home before the fire was $18,000 and the contents were worth about $10,000.

The appellant admitted selling the additional insurance to Mrs. Massengill on the nursing home before the fire and also admitted that he did not inform the insurance adjustor about the household goods that were stored in Prescott.

We think there is sufficient corroboration of the accomplices' testimony to sustain the conviction. The rule is laid down in *Casteel* v. *State,* 205 Ark. 82, 167 S. W. 2d 634, as follows: "This Court in the recent case of *Fleeman and Williams* v. *State,* 204 Ark. 772, 165 S. W. 2d 62, with reference to this section of the Statute, reiterates the long established rule in this language: 'The rule in this State is that the corroborating evidence need only tend to connect the defendant with the commission of the offense, and not that such evidence of itself be sufficient, and where there is substantial corroborating evidence tending to connect the defendant with the offense, its sufficiency is a question for the jury, together with that of the accomplice. *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *Mullen* v. *State,* 193 Ark. 648, 102 S. W. 2d 82; *Smith* v. *State,* 199 Ark. 900, 136 S. W. 2d 673; *McDougal* v. *State,* 202 Ark. 936, 154 S. W. 2d 810.' See also, *Powell* v. *State,* 177 Ark. 938, 9 S. W. 2d 583."

The appellant's objection to the Court's instructions to the jury with reference to suspended sentence is based upon the following statements:

"BY THE COURT: You want to know if you have authority to recommend a suspended sentence; I will answer that, members of the jury, this way: You certainly have the authority. I would, however, caution you that no juror should interpret that to mean that you are being encouraged to compromise on the question of guilt or innocence. The question of a man's guilt or innocence is based solely and exclusively upon the law given you by the Court and the evidence gleaned from the witness stand. Does that answer your question, or do you have any additional questions?

"MR. KENT: If anybody's got a question, speak up.

"MR. ATKINS: If the Court please, I would like, as the attorney for the defendant, to ask the Court to further instruct the jury that by recommending the suspended sentence, that the Court is in no way bound to give a suspended sentence.

"BY THE COURT: Yes, the Court would not intentionally say anything at any step in this proceeding, and particularly now, to lead you to believe that the Court wants anybody to compromise their convictions, and please be advised that the Court is not bound by your recommendation, one way or the other. *Thus far, I believe I have followed jury recommendations on matters of clemency,* but the Court is not saying that it will or that it will not; the Court will simply say to you that you have a perfect right to make this recommendation. *If you so desire, the Court will be glad to receive it.*"

We feel that the above italicized statements are objectionable. The only statement a Court should make to a jury about a suspended sentence is: That the jury has the right to recommend a suspended sentence for any defendant they convict, if they determine such recommendation is justified. That the Court is not bound by such recommendation to suspend the sentence and may or may not do so. The whole question as to whether a sentence of a convicted person will be suspended, or not, is to be finally determined by the Court trying the case. No statement should be made by the Court that might tend to lead the jury to believe a suspended sentence would be granted if requested.

No objections were made by the appellant at the time the statements were made. This Court in the case of *Pendleton* v. *State,* 211 Ark. 1054, 204 S. W. 2d 559, and in *Filtingberger* v. *State,* 216 Ark. 754, 227 S. W. 2d 443, upheld the trial court in similar cases where no objections were made in the trial court. The Ark. Statutes, § 43-2813, 1947, requires the parole officer, when requested by the Circuit Judge—of any Judicial Circuit, to investigate the past history of any persons applying for suspended sentence or other clemency and to make available to the Court his findings.

Judgment affirmed.

Justice GEORGE ROSE SMITH concurs.