**People of the State of Illinois, Appellee, v. Claude Oatis, Appellant.**

Gen. No. 51,148.

First District, First Division.

August 1, 1966.

Amiel G. Hall and Howard T. Savage, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

After a bench trial, defendant was found guilty of forcible rape and sentenced to the penitentiary for a term of 8 to 20 years. On appeal, defendant asserts the evidence fails to establish penetration or the use of force.

The complaining witness, 20 years old, testified that on the morning of June 11, 1963, she left her home at 5:15 to take a bus to a department store where she worked. She lived on South Eberhart and was walking west on 74th Street when a car pulled into an alley in front of her. A man got out of the car with a tire iron in his hand. He pushed and dragged her into the back seat of his 2-door car. During this time she was begging him to let her go. He told her to be quiet or he would hit her. He drove her "somewhere by the expressway or tollway between Champlain and took me into the alley. There was no traffic in the alley. We passed no cars at this time. When he stopped in the alley, he told me to pull my clothes off. . . . I was pleading with him. . . . He told me if I didn't hurry up he would help me get out of my clothes. I told him that I was on my period. He said he didn't care. He told me to get my clothes off or he was going to hurt me, so I got out of my clothes. I pulled my panties down and he put on a rubber and had intercourse with me. I was pleading with him and crying. After he had the relations with me, he drove me back to where I was. . . . About twenty minutes elapsed from the time he put me in the car and

the time he dropped me back at 74th and Eberhart. When I got out of the car, I ran upstairs and rang the bell and my aunt came downstairs and got me. She called the police. The police came, they talked to me and asked me questions and took me to the hospital. I next saw the defendant, Claude Oatis, at a jailhouse on 75th Street that night. I identified him there."

On cross-examination, she testified, "I had never known Mr. Oatis before. I had never seen him in the Invicta Lounge at 74th and South Parkway. I have never been there. . . . The only conversation I had in the car with Mr. Oatis was pleading with him to leave me alone. . . . He just about drug me to the car. . . . He pushed me into the back seat. . . . I pleaded with him to let me go. He told me if I didn't shut up he would hurt me, he did not say anything else to me. . . . I got out of my clothes when he told me he was going to hurt me. He did not strike me at any time. . . . He said that he had been watching me all the time. After the relationship, he took me back to 74th and Eberhart. I got out of the car and ran upstairs. He waited until I opened the door and got out. As I was running, I turned around and saw the license plate. I didn't know what kind of a car it was exactly, I was a bit excited. I was afraid. . . . I gave a statement to the police officer."

Another witness for the State, a police officer assigned to the Homicide-Sex Unit, testified that on the evening of June 11, 1963, he was informed that defendant Oatis was in custody on a rape charge which had been preferred earlier that day. In the presence of the defendant, a written and signed statement was taken from the complaining witness. The officer further testified, "We asked him if this was the truth and he denied it. He said that he had met [her] on the street and that he had propositioned her and after some conversation she got into the car with him. They drove away and he stopped near the Skyway and he attempted to have relations with

105

her and he found that she was having her period and that he did not have relations with her. He drove her back to 74th and Eberhart where he let her out. . . . [Later] he stated the same thing except he said he did have relations with her and that it was entirely voluntary and that he had not used force on her at any time."

The defendant testified that he had seen the complaining witness "at lounges and at a couple of parties. I have seen her at the Invicta Lounge at 74th and Cottage Grove." He had been driving along 74th Street when he saw the complaining witness. He stopped and they talked, and it was agreed that he would drive her to work after he made a few stops. He drove to the home of a friend he was supposed to pick up; he honked the horn, but received no answer. Defendant then testified that he and the complaining witness started to "neck," and she made no objection except to say, "Not here." They then drove until they found a secluded alley and there began to "neck" again. He told her to get ready, and he got out of the car to urinate and then put on a "rubber." "She was in the back seat when I got back. She was just sitting with one leg up on the seat and then I had intercourse with her. I was ready to have intercourse with her, and she pushed me up and she called a cuss word out and said, 'Now look what you've done.' I looked down and there was blood all over the seat. My clothes and her clothes too, so I just got out. There was a heavy rain that morning and I got out and took some rags and wet the rags and we wiped the back seat off. . . . When we were through we got back into the front. She sat with me. I drove to 74th Street and got out and walked with her. She said that I didn't have to walk her home. I got back in the car and I said I will see you later. She didn't say anything about whether she was going to work that day. I used no force against the young lady, she submitted of her own will. I did not chase her with a tire iron. She got in the car of her own

106

will. . . . I talked to the police officer who just sat down a few minutes ago. I told him that she had submitted and I told him that I used no force."

On cross-examination, he testified, "There was a tire iron, wheel and everything in the back seat of my car. I did not threaten [her]. . . . Prior to my relations with her, I got out of the car and made a telephone call. . . . When I was first questioned by the police, I did tell them I did not have intercourse with [her]. Later I told them I did."

After both sides rested, the trial judge commented on the evidence and found the defendant "guilty as charged in the indictment."

██ Initially, we agree with defendant that proof of penetration is a necessary element of the crime of forcible rape (People v. Perez, 412 Ill 425, 427, 107 NE2d 749 (1952)), but we do not agree that "a reasonable doubt of penetration exists in this record." The direct testimony of the complaining witness, defendant's admissions to the police officers, and defendant's own testimony leave no reasonable doubt of penetration.

As to force, defendant argues that taking the testimony of the complaining witness "as true in every detail, it fails to establish that the intercourse with defendant was forcible and against her will within the meaning of the statute defining the offense of rape." Defendant contends there was no evidence that her faculties or physical powers were in any way impaired, and that there is no evidence that she resisted defendant in any way or made an outcry or attempted to escape, though the opportunity was afforded her, and her voluntary submission while having power to resist amounts to consent and removes from the act an essential element of the crime of rape.

On this point defendant's authorities include People v. Rossililli, 24 Ill2d 341, 181 NE2d 114 (1962), where the court stated (p 346) :

107

"The sum and substance of her testimony is that Rossililli demanded that she submit to sexual intercourse and told her he would hurt her if she did not consent; that she refused; and that Rossililli then removed her underclothing, held her down and had intercourse with her. What was said in People v. Scott, 407 Ill 301, is appropriate here. In that case we reversed a rape conviction and said, page 305: 'It is a fundamental rule in such cases that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. . . . It is also fundamental that voluntary submission by the female, while she has power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of rape.'

"There is no evidence in the present case that Mrs. Gorlick's faculties or physical powers were in any way impaired, nor is there any evidence that she resisted Rossililli in any way. The evidence does not support an inference that she was so paralyzed by fear or overcome by physical force that she was powerless to resist."

In People v. Nelson, 360 Ill 562, 196 NE 726 (1935), the court said (p 568):

"We have repeatedly held that where a conviction in a rape case depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness should be corroborated by some other evidence, fact or circumstance in the case."

The State argues that there is no satisfactory and definite standard as to the amount of force which is required, this being a question which must be determined by all the facts and circumstances in each particular case. In People v. Smith, 32 Ill2d 88, 203 NE2d 879 (1955), it is said (p 92):

"There is no definite standard fixing the amount of force required and each case must be considered on its own facts. It is the general rule that if the female has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear."

██ ██ We have carefully scrutinized the testimony in this record. It has been said that an accusation of rape is easy to make, difficult to prove, and still more difficult to defend against. Hence, this court in such a case is charged with the duty of carefully examining the evidence. However, the testimony of the prosecutrix, uncorroborated by other witnesses, may be sufficient to sustain a conviction of rape. People v. Perez, 412 Ill 425, 427, 428, 107 NE2d 749.

██ In a bench trial in a criminal case, the reviewing court, in view of the opportunities for observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to a defendant's guilt. People v. Woods, 26 Ill2d 582, 585, 187 NE2d 692 (1963); People v. Boney, 28 Ill2d 505, 510, 192 NE2d 920 (1963).

██ In applying the foregoing guidelines to the instant case, we are of the opinion that the evidence supports the finding of guilty of the charge of forcible rape beyond a reasonable doubt. The prosecutrix testified that

the defendant threatened to hit her while "he had an iron in his hand," and repeatedly stated "he was going to hurt me" if she didn't cooperate. Defendant testified that he had a tire iron in the back seat, and it is undisputed that the occurrence took place at a very early hour in the morning, in a deserted area, where an outcry would be futile. The failure of the prosecutrix to make an outcry or to physically resist defendant, who was threatening to hurt her with an "iron" or "tire iron," is understandable. In People v. Faulisi, 25 Ill2d 457, 461, 185 NE2d 211 (1962), it is said:

> ". . . resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker."

We also note that the prosecutrix made complaint of the rape immediately after the occurrence, the police were called at once, and defendant was apprehended and charged with the offense during the same day.

As to defendant's denial of the rape and his testimony as to the consent of the prosecutrix, the trial court, in finding defendant guilty, remarked: "I watched the demeanor of both the victim and the defendant and I gathered the impression that the victim was telling the truth and that the defendant was not. Furthermore, when she said that he used force and threatened her with a tire iron and pushed her into the car, it doesn't make any difference if she later pulled off her panties. If he threatened her with force she didn't have to undergo force; she could submit. All the facts and circumstances in the case, even if the testimony of the victim

and the defendant were equal—which they are not in my mind—but even if they were, all the facts and circumstances in the case corroborates the girl. Now, the defendant was brought down to the police station and she gave a statement of what happened in the presence of the defendant. The officer asked the defendant if that was true and he denied it. He denied he had intercourse with her. Then later he changed his story and said, yes, he had intercourse with her but she submitted voluntarily. Now, I don't think she submitted voluntarily. . . . I don't think there is anything in this case in defendant's favor. He added perjury to his crime of forcible rape. He has taken the stand and told a story that is not believable." These remarks of the trial judge are substantiated by this record, and we find that the proof here is not "so unsatisfactory or implausible as to justify a reasonable doubt" as to defendant's guilt.

For the reasons given, the judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.