**The People of the State of Illinois, Plaintiff-Appellee, v. Robert Jackson, Defendant-Appellant.**

**Gen. No. 51,534.**

First District, Fourth Division.

April 14, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Frederick F. Cohn, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Burglary.*

JUDGMENT: After a bench trial the court found the defendant guilty and imposed a sentence of not less than one nor more than three years.

POINT RAISED ON APPEAL: Defendant was not proved guilty beyond a reasonable doubt.

EVIDENCE: Augustine Molina testified as follows: He had a place of business on the first floor at 1816 North Halsted Street in the City of Chicago, where he sold records, jewelry, and phonographs. On Friday, February 25, 1966, he closed his store about 8:00 or 9:00 p. m. There was only one door to the shop and that was protected by a gate in the front. When he returned to the store on February 26, at about 9:30 a. m., he saw that the left side of the wall was broken; there was a big hole in it, about 1½′ to 3′—big enough for a person to crawl through—and a window in the back of the basement was

---

* Ill Rev Stats 1963, c 38, § 19–1. Burglary.

(a) A person commits burglary when without authority he knowingly enters into, or without authority remains within a building, housetrailer, watercraft, aircraft, railroad car, or any part thereof, with intent to commit therein a felony or theft.

(b) Penalty. A person convicted of burglary shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year.

broken. There was a lot of plaster lying around on the floor inside the shop. Molina stated that he checked the goods in his store and found 20 rings and 8 earrings missing. He said he did not know the defendant, Robert Jackson, nor did he give him any authority to enter his store; he had never seen Jackson before and Jackson had never purchased anything from him. He stated that the wall was not an outside wall, and if a person crawled through it he could go to the stairs to the basement where there was a broken window with a hole about 1½′ to 2½′ large. He testified that the missing rings were worth $10 each and the earrings $4 each; that he did not have any insurance to cover loss by theft.

Police Officer Philip Duhr testified that he went to 1816 North Halsted Street at 6:55 a. m., on February 26, 1955; that it was a 2-story building with a record shop on the ground floor; that he saw a hole in the inner wall leading into the shop, and found an open window leading into the basement on the north side of the building, through which window he and his partner entered. He stated that he and his partner searched the basement, then found a second stairwell and an open door which lead to a rear apartment of four or five rooms, occupied by Jose Soto, his wife and four children, all of whom were sleeping when the police entered. He testified that they woke the family, then went into a side room used for hanging laundry, and found the defendant, Robert Jackson, hiding behind a dresser in the room. Officer Duhr stated that he asked Soto if he knew the defendant and he said he did not; the defendant said nothing. Officer Duhr further testified that on the stairs leading from the basement towards the hole in the shop wall they found a screwdriver and a crowbar.

On cross-examination Officer Duhr reiterated his testimony that he got into the basement from the outside through a window which was pushed up; there was no glass in it and it was boarded up on the inside; that the

window was about 18 inches high and 2 and a half feet wide; that the hole in the wall leading into the record shop was large enough for a person to crawl through. He further testified that when the defendant was arrested his clothes were covered with the plaster dust from the hole.

Robert Jackson testified in his own behalf that at the time of his arrest he was living at 1154 East 62nd Street, but he gave his mother's address of 1526 South Drake, because he was living with a girl friend at the other address. He stated he worked off and on for a man who owned Christian Home Furniture at 3122 West Madison. He stated that he had been in Molina's store three or four times and had known Molina for quite a few years; that he believed Molina used to have a store at LaSalle and Division; that occasionally he bought things from Molina and resold them, which he called horsetrading; and these items were usually bongo drums and record players. Jackson testified that on February 25, 1966, at about 9:00 p. m., he talked to Molina in his store; that Molina brought up the subject of a deal which had previously been discussed between them, in which the defendant was to make it appear that a burglary had been committed in the store. He stated that he did not know what Molina expected to gain from it, but that he was told to stay in the store and some time during the night to make it look as though the store had been broken into; that he was then to put some rings into a brown case, put them aside, and when Molina came to open up that morning, Jackson was to take the articles to a public locker and bring the key back to Molina. He testified that for going through with the deal he was to receive from Molina "one Olson amplifier, between thirty-five and forty-five watts, . . . also one turntable, and about $200 in cash." He stated that it was daylight when he knocked the hole through the wall from the inside; he saw a woman outside the

store looking in and he went behind a case to take out the rings and put them in the case which was on the floor; that a car drove up outside with several occupants in it who began waving to him and honking the horn, and he indicated to them that the store would open at nine or nine-thirty. He stated that about 5 minutes later the police arrived, at which time Jackson went through the hole in the wall to the basement; that he was trying to open the boarded-up window when he heard footsteps, and when the policeman turned his flashlight inside, the defendant saw the other stairwell which he entered and which led into the Soto apartment where he was discovered by the police. He later testified that he had left the brown case on the floor when he left the store; that when he was arrested he did not tell the police about the "deal" he made with Molina, and that he did not have any rings on him when he was arrested.

The defendant testified that he had gone to sleep in the rear of the store while looking at television and did not waken until daylight; that he had knocked the hole in the wall with his feet, and was wearing boots with heavy heels, so he used no tools; that he had seen the screwdriver and crowbar before, and that they belonged to Molina; that the defendant had taken the tools from the back room of the store and placed them on the stairwell to make it appear that they had been left there by the burglar.

It is worthy of note that the defendant testified on direct examination that when he went out of the store through the hole, the police had arrived, and that he crouched down, going along slowly. He testified that the first time he told anyone the story about his agreement with Molina to make his visit to the store look like a burglary, was after he was indicted and went into court for the first time.

Molina was recalled to the stand as a witness for the defendant. On cross-examination he stated that when

211

he first talked to the police he did not report his loss because he first had to check his stock. On cross-examination by the Assistant State's Attorney he stated that he dealt only in new merchandise and did not enter into any horsetrading with anyone for old merchandise. On redirect examination by counsel for the defendant, Molina testified that he found an empty case on the floor and that the total value of the missing rings and earrings would have been $232 or $234; that he had owned a store at LaSalle and Division and had moved to his present address the previous year. In response to a question by the judge, the Assistant State's Attorney stated that the articles alleged to have been taken were never recovered.

OPINION: The defendant argues in this court that the controlling fact to prove his innocence is that the rings were never recovered, and he bases the argument upon a statement in his brief which is not in accord with the evidence. In the brief he states: "The police testified that they caught the defendant right in the store." All of the testimony is that the defendant was caught hiding in an apartment above the store; that he had been in the basement after he left the store; and, while the testimony of the police officer is that the tenant of the apartment said he did not know the defendant, that again becomes a question for the trier of the fact to determine. What happened to the rings and other articles alleged to have been taken by the defendant is unknown, but certainly there is evidence that the defendant had both time and opportunity to dispose of them.

The defendant testified that while in the County Jail he had made two diagrams showing the layout of the store. These do not appear in the record. From this testimony the defendant argues it can be inferred that he became absolutely familiar with the store while planning the fake burglary. In negating this argument the

trial judge relied on 1) Molina's testimony that there was no insurance; 2) that it was economically not feasible for a man to pay someone $200 plus other articles of value for stealing $232 worth of merchandise; 3) that the defendant, according to his testimony, was in the store all night and could have acquired his knowledge of the layout then. To this could be added the further reason that a burglar would become acquainted with the premises before planning any burglary. It seems to this court that the reasoning of the trial court was sound and that there was ample justification for his having believed Molina and disbelieved the defendant.

The defendant stresses his argument, again misstating the evidence, by saying, "Where did the rings go in view of the fact that the defendant was apprehended inside the store?" However, the evidence does not show that the defendant was so apprehended. Again, the defendant stresses the fact that the merchandise allegedly stolen had never been recovered, and, reiterating the misstatement previously pointed out in his brief says, "Since the defendant was apprehended in the store by the police; . . ."

In the defendant's brief the statement is made that "Defendant testified that he agreed with complainant to fake a burglary in return for merchandise and $200.00 in cash (R. 32–34). Defendant's testimony was unrebutted." Again, an absolute and inexcusable misstatement of fact, since Molina had testified that he had never seen the defendant before in his life, nor had he given him any authority to enter his store.

From reading the defendant's brief this court gets the impression that he was arguing about an entirely different record from the one in the case before us; the defense set up by the defendant borders on the fantastic. The court heard the witnesses and believed the evidence of Molina, and disbelieved that of defendant.

██ ██ In People v. Oatis, 74 Ill App2d 103, 220 NE2d 71, the court said:

"In a bench trial in a criminal case, the reviewing court, in view of the opportunities for observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to a defendant's guilt. . . ."

In People v. Ritchie, 36 Ill2d 392, 222 NE2d 479, the court said:

"To reverse a conviction on the evidence only, thereby substituting our judgment for that of the trial judge sitting without a jury, it is necessary that we find a clearly reasonable and well-founded doubt of the guilt of the accused. (People v. Cox, 20 Ill2d 458.)"

██ The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.