HOLUB v. STATE.

Opinion delivered July 9, 1917.

1. TRIAL—CONTINUANCES—DISCRETION.—Continuances in civil and criminal cases are within the sound discretion of the trial court, and the action of the court will not be disturbed, unless it has abused its discretion to the defendants' injury.

2. TRIAL—MOTION FOR CONTINUANCE—TIME FOR HEARING.—It is not an abuse of the courts' discretion to hear testimony on both sides, touching a continuance after some of the jurors have been selected.

3. APPEAL AND ERROR—CONDUCT OF JURY—TAKING PAPER TO JURY ROOM.—In a prosecution for larceny defendant relied upon a sale of the chattel to him. Held, under such facts he was not prejudiced by the jury's taking to the jury room with them an alleged bill of sale, upon which defendant relied, and for the authenticity of which he vouched.

4. LARCENY—SUFFICIENCY OF EVIDENCE.—The evidence held sufficient to sustain a conviction for larceny.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*R. J. Williams* and *Mann & Mann,* for appellant.

1. A continuance should have been granted to enable defendant to procure the attendance of the witness, Toms. The motion was in due form, filed in a fit time, gave the names and residences of the witnesses and set out all the facts he expected to prove. The testimony was material and not merely cumulative. Art. 2, § 10, Const.; 58 Ark. 549; 2 *Id.* 33; 10 *Id.* 527; 26 *Id.* 496; *Ib.* 496.

2. It was error to allow Tankersly to testify after the motion for continuance was overruled as to a conversation with one purporting to be a deputy sheriff over the telephone. It was error to admit this testimony after ten jurors had been empaneled and accepted, and in their presence and hearing.

3. The jury were allowed to take the bill of sale to the jury room, over appellant's objection.

4. The testimony does not support a finding that the hog was feloniously taken and carried away. No criminal intent is shown. 71 S. W. 482.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.  The continuance was properly refused. It did not contain the necessary allegations. The testimony was cumulative merely. Kirby's Digest, § 6173; 79 Ark. 594; 82 *Id.* 203; 86 *Id.* 317; 89 *Id.* 46; 100 *Id.* 149.

Every officer is presumed to do his duty; the *non est* return was evidence that the witness was not in Mississippi County. 49 Ark. 449; 100 *Id.* 180.

2.  No prejudice resulted from the testimony on the rehearing of the motion for continuance, in the presence of jurors. But no objections were made in time. 56 Ark. 488; 56 *Id.* 4.

3.  There was no error in allowing the jury to take the bill of sale with them. 94 Ark. 343.

4.  The evidence is sufficient. The finding of the jury will not be disturbed. 104 Ark. 162; 101 *Id.* 51; 95 *Id.* 321.

### STATEMENT BY THE COURT.

On the 26th of March, 1917, appellant was indicted by the grand jury of St. Francis County for the crime of grand larceny. The indictment, in correct form, charged him with the larceny of a hog, the property of one O. Jordan.

The case was called for trial on April 4, thereafter and appellant filed his motion for a continuance, in which he set up that immediately upon being arrested on the charge in the indictment he proceeded with due diligence to have subpoenas issued for all the witnesses desired by him; that one of the witnesses was John Toms; that he caused a subpoena for this witness to be directed to the sheriff of Mississippi County, where defendant was informed and believed that Toms resided; that the subpoena had not been returned, but defendant was informed that the sheriff of St. Francis County had been advised by the sheriff of Mississippi County that the subpoena had not been served on Toms; that the sheriff of Mississippi County had not used due diligence to serve

the subpoena; that defendant believed that Toms was residing within about a mile of Blytheville, in Mississippi County, and could easily be found; that defendant believed if Toms were present he would testify that defendant purchased from him, Toms, the sow that defendant is charged with having stolen in good faith and paid full value therefor; that Toms was not absent with the consent and connivance of the defendant, but, on the contrary, the defendant had endeavored to assist the officers in the location of the witness and believed that the witness could be easily found; that the facts were material to his defense. The defendant verified the motion by stating on oath that the facts set forth were true as he verily believed. The court overruled the motion.

After ten jurors had been accepted by both parties to try the case counsel for the State was granted permission to introduce testimony on the motion for a continuance. Counsel for defendant objected, which objection was overruled, and to which ruling the defendant duly excepted.

A deputy sheriff of St. Francis County testified, on behalf of the State, on the motion for continuance, that he talked over the phone to the sheriff's office in Mississippi County, and the party to whom he talked represented himself to be the chief deputy in charge of the sheriff's office. Over the objection of appellant, the witness was permitted to state that the party to whom he talked said that he could not locate Toms and had returned the subpoena *non est*. The conversation occurred after the subpoena had been forwarded to the sheriff of Mississippi County, and after the *non est* return had been made.

The clerk of St. Francis County testified that he issued two subpoenas for John Toms, directed to the sheriff of Mississippi County. He mailed one to the sheriff at Blytheville and delivered the other to defendant at his request. When the defendant asked for the subpoenas he stated that John Toms was at or near Blytheville, and that witness put such information in the

subpoenas. Holub asked witness for the subpoenas before the case was set and witness told him that he could not issue them until the case was set for trial, and he came back the next day, immediately after the case was set, and asked for the subpoenas.

J. D. Holmes testified on behalf of the defendant in support of the motion for continuance, that he was acquainted with John Toms; had known him all of witness' life. Toms was at Blytheville when witness left there a month or so before, and was there a week ago according to a letter witness received from him. Witness had not been at Blytheville nor seen Toms in a month and did not know personally where he was nor where he had been for the last month.

The court then overruled the motion and appellant excepted to the ruling on the ground that the testimony on the motion was taken at a time when ten jurors had been selected to try the case and in their presence.

The testimony on behalf of the State tended to show that the sow appellant is alleged to have stolen was the property of one O. Jordan, who purchased the same from one Sardin. The sow was about four years old and was marked in Sardin's mark. Sardin sold the sow to Jordan in September. The last time he saw her was on Friday after the Sunday when it was alleged that she had been stolen. Three or four days before the Friday mentioned the sow was at witness' place and witness put her up in his stable and Jordan, the owner, came down and got her. Other parties owned hogs of the same kind in the same community. It was not an uncommon stock.

Jordan testified that he lost the sow, describing her. He bought her from Sardin and took her to his home and put her up. She broke out in three or four days, and witness went to Sardin's looking for her and got information that she was at Holub's. He went to Holub's and told him that he wanted to see the sow that he had caught on the prairie. Holub told witness that she was in the barn. He found the sow in a box stall in the back of the barn. He told Holub that it was the sow that witness

had bought from Sardin. Holub replied that he bought her from John Toms. Witness told Holub to bring the sow to witness' lot. Holub replied that he did not get her there and he would not do so. Holub did not say anything about a bill of sale at that time. Witness got out replevin papers and was present at the time they were served. Holub said that he had just got back from where he had gone to see two parties who had witnessed a bill of sale for the sow when he, Holub, purchased her from Toms; that these two witnesses had been down to his place to look at the sow and they identified her as the same sow that he bought from Toms.

Other witnesses corroborated the testimony of witnesses Sardin and Jordan as to the identity and ownership of the sow in Jordan, and as to Holub's having her in his possession.

Another witness who testified on behalf of the State stated that Holub came to witness' house on the 25th of March, 1917, on Sunday morning, inquiring for cattle. Witness told Holub that he had not seen the cattle, but that there was a black sow there. Holub asked witness to go with him to look at the sow. Holub claimed the sow as his property. Holub came back, and two other men with him, and they took the sow. Holub said that he had hogs gone that he had not seen since last summer; that four had gone off at the same time; had not seen any of them until that morning. The place where Holub caught the hog that morning was a little over a mile from Holub's house. When Holub came back to witness's house after the sow he came in his wagon. They ran the hog out in the open, along the public road, where people could see them; no effort to conceal anything. Holub saw another man there, but did not stop trying to catch the hog.

Two witnesses testified that they were present when Toms sold Holub some hogs, a black sow and three shoats; that it was in June, 1916. They stated that a bill of sale was executed which they witnessed. A purported bill of sale was introduced. It recited as follows: "This certifies that I, John Toms, did sell to F. E. Holub, this

day, the following described hogs: One black sow, about two years old, weighing 185 pounds; three head of shoats, weighing about 80 pounds each, for a consideration of $25.50; said hogs are marked crop and split and underbit in left ear.'' The instrument was signed by John Toms.

Two witnesses testified that at the request of Holub they accompanied and assisted him when he went with his wagon and brought the sow home.

The appellant himself testified, his testimony being the same as that of the other witnesses concerning the manner in which he first obtained possession of the hog after he had purchased her from Toms. He stated that he bought the hogs from Toms as evidenced by the bill of sale, took them to his home and turned them out on the range; that the sow he was charged with stealing was the same hog that he had bought from John Toms. He paid $25.50 for the sow and three shoats. When Jordan came to his house and asked to see the hog that he had brought home he told him ''all right,'' and went with him and showed him the hog. Jordan claimed her and appellant claimed her, and Jordan replevied the sow from appellant. Appellant went after the witnesses Burns and Holmes, who had witnessed the bill of sale. He did not know whether they would know where he was and he wanted them there as witnesses. He went to find John Toms and found that he had gone to Mississippi County. He had a summons issued for John Toms the day the case was set for trial the first time, gave the officers what information he had as to Toms' whereabouts; told them that he lived at Blytheville, and made every effort that he could to get him. Appellant took the bill of sale because he did not know Toms very well and did not know his mark. Appellant wrote the bill of sale.

Testimony was introduced by the State in rebuttal, tending to impeach Holub as a witness. The jury returned a verdict of guilty against appellant, and assessed his punishment at one year in the State penitentiary. A motion for a new trial was filed, assigning as errors the rulings of the court to which exceptions were duly saved.

The motion was overruled, and the court entered judgment sentencing appellant to the penitentiary, from which this appeal has been duly prosecuted.

WOOD, J., (after stating the facts). I. This court, in cases too numerous to mention here, has held that continuances, in criminal as well as civil cases, are, as a general rule, within the sound discretion of the trial court, and a refusal to grant a continuance is never a ground for a new trial unless it is made to appear that such discretion has been abused to the prejudice of the defendant. In some of our cases much stronger language is used in announcing the law to the effect that in passing on motions for continuance this court will not disturb the ruling of the trial court unless it appears that such ruling, in denying the same, is arbitrary and capricious, thereby manifesting such an abuse of the court's discretion as results in the denial of justice. *Smedley* v. *State;* 130 Ark. 149.

Perhaps the most cogent language used in this connection in any of our cases is that by Mr. Justice SMITH in *Loftin et al.* v. *State,* 41 Ark. 153, where he says: "It must be a flagrant instance of the arbitrary or capricious exercise of power by the circuit court, operating to the denial of justice, that will induce us to interfere."

But see the language of Judge LACEY, in the very earliest case upon the subject, in *Burrus* v. *Wise & Hyman,* 2 Ark. 33, 42.

In some of the cases the rule is expressed in this way: "Continuances are largely in the discretion of the trial court, and their discretion will not be controlled except in cases of manifest abuse." *Puckett* v. *State,* 71 Ark. 62, and cases there cited. While in other cases it is stated: "Motions for continuances in the cases are matters resting largely in the sound discretion of the trial court, and rarely afford grounds for reversal unless it is made to appear that such discretion has been abused." *Vannetta* v. *State,* 82 Ark. 203.

Whether the milder or the stronger language employed by our cases to express the rulings in regard to controlling the discretion of the trial court in matters of continuances be applied to the facts of this record, it seems clear to a majority of us that there was no abuse of the court's discretion in overruling the appellant's motion for a continuance. In the first place, the court might have very well concluded that inasmuch as the sheriff of Mississippi County had returned a *non est*, it would be confronted with the same conditions at the next term. Public officers will be presumed, until the contrary is shown, to have faithfully discharged their duty, and we can not assume that the sheriff, in making a *non est* return, did so without any attempt upon his part to obey the mandate of the subpoena in making an honest effort to find the witness and serve the same upon him. In the second place, the court did not abuse its discretion in concluding that the testimony of Toms would have been cumulative. The appellant himself and two other witnesses testified to all the facts that appellant claimed in his motion for a continuance would have been shown by the testimony of Toms, towit: That the appellant purchased the sow in good faith from Toms. We have over and over again announced that it is not error to overrule a motion for a continuance on account of the absence of a witness whose testimony would be merely cumulative. *Goddard* v. *State*, 100 Ark. 149; *Johnson* v. *State*, 89 Ark. 46, and other cases cited in the Attorney's General's brief.

II. The action of the court in taking up the motion for a continuance after ten of the jury had been selected and permitting evidence to be adduced for and against the motion was not in regular order, but we fail to discover that anything was said or done by the witnesses, the attorneys or the court that was calculated in the least to cause any sensible juror to forget the obligation of his oath to try the case according to the law and the evidence.

III. There was no abuse of the discretion of the court in permitting the jury to take with them to the jury

room for examination in their deliberations the bill of sale. Appellant introduced this bill of sale himself. By so doing he vouched for its authenticity. He was relying upon it as a most convincing piece of evidence, and such being the case he certainly could not be prejudiced, at least would have no right to complain, that the paper was subjected to the most crucial inspection that the jury might make of it to test its genuineness. See *Harshaw* v. *State,* 94 Ark. 343. If it could not stand the test it was not competent evidence at all.

IV. It does not seem to us that the facts present a very strong case for conviction, but after a careful consideration of the evidence, which speaks for itself, and is fully set forth in the statement of the case, we can not say that the verdict is wholly without substantial evidence to sustain it. It was the province of the jury to weigh it and give it such credit as they believed the witnesses were entitled to, and when considered from the viewpoint of the strongest inference of guilt that might be drawn from it, it can not be said that there is no substantial evidence to sustain the verdict.

Finding no error, therefore, in the record, the judgment must be affirmed.