LEMUEL E. CLAYTON *v.* STATE OF ARKANSAS

5-5438                                    447 S. W. 2d 319

Opinion delivered November 17, 1969

[Rehearing denied December 22, 1969.]

*Nick Wilson* and *Hugh Brown,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

J. FRED JONES, Justice. Lemuel E. Clayton was tried twice in the Randolph County Circuit Court on the charge of possessing an illicit whisky still and worm. On the first trial the jury was unable to agree on a verdict and on the second trial Clayton was found guilty and sentenced to one year in the Arkansas State Penitentiary. On appeal to this court Clayton relies on the following points for reversal:

"The verdict is against the evidence of the case and the court erred (1) by not directing a verdict for appellant on appellant's motion, and (2) by refusing to grant appellant's motion for a new trial.

The court's instructions, admonitions and statements to the jury subsequent to the submission of the case to the jury for deliberation induced a verdict which was not a fair expression of opinion of the jurors."

James Thomas and Tracy Cowan were Negro men who lived in Memphis, Tennessee. They were arrested in September, 1966, while operating a whisky still near Janes Creek on a vacant farm in northern Randolph County, Arkansas. They both implicated Clayton in the ownership of the still. Clayton had previously lived just over the state line in Mississippi where he had operated an oil products business. Clayton owned a farm in Randolph County near where Thomas and Cowan were arrested. Thomas and Cowan were convicted of manufacturing untaxed whisky and they testified as witnesses for the state at Mr. Clayton's trial.

Thomas testified that Clayton had lived over the state line in Mississippi about two and one-half miles from where Thomas lived on the outskirts of Memphis. He testified that he had purchased oil and grease for tractors from Clayton and had known him for some time. Thomas testified that he had been sentenced to two years in federal prison for making whisky and was released in 1965; that in the spring or summer of 1966 Mr. Clayton proposed to Thomas that they go into the

whisky making business and that he agreed. He testified that Clayton proposed to furnish the still and all materials and equipment and Thomas agreed to build the still, set it up and operate it for $25 for each "run." He says that Clayton drew him a map of how to reach Clayton's home in Randolph County, Arkansas, and that by prior arrangement he drove his automobile to Clayton's home in Randolph County. He says that Clayton drove his pick-up truck from his home, eight or nine miles, to his farm in Randolph County, and that he followed Clayton in his automobile. He says that he and Clayton and Eugene Potts cleaned off a place to set a still on a creek near the barn and vacant house, or cabin, on Clayton's farm, and that he, while working in Clayton's barn, with tools furnished by Clayton, built a still, a worm or condenser and two vats out of sheet tin and copper furnished by Clayton; that a few days later he and Clayton set up the still on the spot they had cleaned off for that purpose and that they filled the vats with mash. Thomas says that he then returned to Memphis and after a few days, when the mash in the vats had fermented, he returned to the still on Clayton's farm and made whisky. He says that he made several "runs" on Clayton's place and made several gallons of whisky for Clayton. He says that they ran out of water at the Clayton farm location and that Mr. Clayton decided to move the still to the Janes Creek location. He says that he brought Tracy Cowan from Memphis with him and he and Tracy and Mr. Clayton moved the still and set it up at the Janes Creek location. He says that Mr. Clayton hauled the still and equipment in his truck to the new location, previously selected by Clayton, and that he and Tracy followed in his automobile. He testified that they re-established the still at the new location and he made several gallons of whisky at the new location before he and Tracy were arrested. He testified that Mr. Clayton purchased and furnished all the materials, including charcoal and sugar, and delivered the materials to the still site in his truck. He testified that he and Mr. Clayton called each other several times by long dis-

tance phone, and that he was with Mr. Clayton on one occasion when Mr. Clayton purchased sugar and charcoal at Shoult Grocery in Memphis and paid Shoult with a check for $58.

When Thomas was arrested at the Janes Creek location, he told the police officers about the original setup on Clayton's farm and showed them the original location of the still. Cowan corroborated Thomas' testimony as to Clayton's participation in moving the still and both Thomas and Cowan described in detail the house, barn and creek layout on the Clayton farm and where the key to a lock on a gate entering the place was kept under a rock at the base of a tree near the gate. There is no question that the testimony of Thomas and Cowan is more than sufficient to sustain the conviction, but neither is there any question that Thomas and Cowan were accomplices and the conviction cannot be sustained on their testimony unless corroborated. Ark. Stat. Ann. § 43-2116 (Repl. 1964). So the question on this appeal, as it relates to appellant's first point, is whether there is sufficient other evidence to corroborate the testimony of Thomas and Cowan. We are of the opinion that there is.

Eugene Potts testified that he was out of work in Memphis and that Thomas asked him about doing some work in Arkansas. He says that he went with Thomas to a shopping center in Memphis where they met Mr. Clayton, and that he agreed to work for Mr. Clayton in Arkansas. He testified that the nature of the work he was to do was not explained to him, but that he rode with Mr. Clayton in Clayton's pick-up truck from Memphis to Clayton's farm in Randolph County. He says that before they left Memphis they went by a place where Clayton purchased some "white" and "brown" tin which they loaded onto the truck and then unloaded into a shed behind Clayton's house on his farm in Arkansas. He says he had never been in Arkansas, and that in entering Clayton's farm they went through two gates and

that the first gate was locked. He says that at Clayton's direction he took a key from under a rock near the gate, unlocked the gate and he and Mr. Clayton drove to a cabin near a barn on the farm. He says that he and Mr. Clayton did some work that afternoon in cleaning off a place near a "branch" under the hill near Clayton's house. He says that he spent the night in the three room house on Clayton's farm, and that the next morning Mr. Thomas arrived in his own automobile and Mr. Clayton arrived in his pick-up truck; that the three of them finished cleaning off the place under the hill near the branch. He says he returned to Memphis with Thomas that afternoon and that the following day, at the shopping center in Memphis, Mr. Clayton paid him $20 by check which he cashed at the shopping center.

Edna Thomas, the wife of James Thomas, testified that she knew that James was working for Mr. Clayton in Arkansas, but did not know that he was making whisky. She testified that Thomas had left Clayton's Arkansas telephone number with her through which she could reach Thomas in case of emergency. She testified that when Thomas failed to return home on the night of his arrest, she called Mr. Clayton and was advised by him that he had heard that Thomas was in jail. She testified that Clayton requested that she not call him again, but that Clayton promised to check out the rumor he had heard and call her back. She says that Clayton did call her back and confirmed the fact that Thomas was in jail and advised her to retain counsel.

Bill Rapert testified that he was sheriff of Randolph County in 1966, and with other officers arrested Thomas and Cowan in the act of loading whisky into a trailer at the whisky still on Janes Creek. He testified that Thomas showed him an old still site on Clayton's farm; that the site was near the house and barn and near a creek that had gone dry. He testified that the site included a hole in the ground where the furnace had been and that the hole had some leaves and some old mash

in it. He testified that he also found a box containing a small hammer and four empty one-gallon jugs within a few yards of the still site. The sheriff confirmed Thomas' testimony as to the gates entering the place and as to the physical layout of the roads and buildings.

Scraps of tin were found on the farm by the sheriff and placed in evidence as exhibits to his testimony. Thomas identified some of the scraps as being discarded by him in Clayton's barn when he cut the parts for the cooker, vats and worm from the sheets of metal while building the still in Clayton's barn.

Mr. Clayton testified in his own defense and denied that he even knew Thomas, Potts, Cowan or Edna Thomas. He admitted the locked gate, hidden key and the physical set up on his farm, but denied knowledge of any whisky still or whisky still site on his farm. He denied that the creek on his farm ever went dry and denied that he ever, to his knowledge, talked to Thomas or his wife by telephone. He denied that he ever purchased tin, charcoal or sugar and denied that he ever paid Potts any amount for working on his farm. Clayton explained the scraps of tin through his own, and other testimony, that bread warmers, dog or hog feeders and other items, utilizing similar tin, had been manufactured on his farm. He explained the empty jugs found on the farm by testimony that he hauled drinking water in jugs. A $10 check from Clayton to Potts was offered in evidence and Clayton explained it as a check he gave an unknown Negro man who had pulled his automobile out of a ditch. Potts denied that he ever pulled Clayton out of a ditch. The only explanation Clayton had for Thomas, Cowan and Potts being so familiar with the physical layout of his farm was that he had advertised the farm for sale and on one occasion had shown it to three Negro men from Memphis who had answered the advertisement. Mr. Clayton made no effort to explain the old still site with some old mash in it as testified by Mr. Rapert, he denied knowing any-

thing about a still or still site. A check from Mr. Clayton to Shoult Grocery in the amount of $56 was offered in evidence but Mr. Clayton testified that it was given for groceries and cash and not for sugar and charcoal.

Three of Thomas' home telephone bills were introduced into evidence which showed long distance calls made from Thomas' home number in Memphis to Clayton's home number in Arkansas on July 8, 1966, July 11, 1966, July 17, 1966, July 24, 1966, August 30, 1966, and September 17, 1966. The September bill also showed that on September 17, 1966, a collect call from Pocahontas, Arkansas, the county seat of Randolph County, was made to Thomas' home number in Memphis. Thomas' home telephone number in Memphis was evidenced by the name, address and number appearing on the bills, and Clayton's Arkansas number was evidenced by a business card the officers found in Thomas' wallet at the time of his arrest and by Clayton's own admission. Clayton was unable to explain these calls at all. He denied that they pertained to whisky making and his only explanation was that they could have been in connection with the advertisement of his farm for sale or pertaining to oil and supply company business which he conducted from his home. Clayton did not attempt to explain the two calls on September 17, 1966, one being from Thomas' home number in Memphis to Clayton's home number in Arkansas, and the other being an accepted collect call from Pocahontas, Arkansas, the county seat of Randolph County, to Thomas' home number in Memphis. Both calls were made the day following Thomas' arrest and he was in jail in Pocahontas on the day the calls were made. Clayton denied receiving a call from Mrs. Thomas on September 17 inquiring about Mr. Thomas and he denied calling Mrs. Thomas back and advising that Thomas was in jail.

Eugene Potts was never arrested or charged with any offense in connection with the whisky operation. He denied that he even knew that a whisky still was to be

set up on Clayton's farm or that one ever was set up or operated on the area he cleaned off under the supervision of Clayton and Thomas while he was working for Mr. Clayton. Potts' status as an accomplice was submitted to the jury under proper instructions and we cannot say, as a matter of law, that Potts was an accomplice. See *Paul Burke, Jr.* v. *State,* 242 Ark. 368, 413, S. W. 2d 646, and the cases there cited.

Certainly Potts' testimony was ample corroboration of the testimony of Thomas and Cowan to sustain the conviction. Even if the jury considered Potts an accomplice and disregarded his testimony under the court's instructions Nos. 11 and 12, we are still of the opinion that the testimony of Sheriff Rapert as to the old still site with old mash in it and the unexplained telephone calls from Thomas' number in Memphis to Clayton's number in Arkansas are substantial corroborating evidence especially when Clayton denies that he even knows Thomas. Certainly the telephone call from Thomas' number in Memphis to Clayton's number in Arkansas and the collect call from the county seat of Randolph County to Thomas' number in Memphis on the day after Thomas was placed in jail, corroborate Mrs. Thomas' testimony as to her conversation on September 17 with Clayton.

We conclude that the above evidence, together with the proven and admitted accuracy of Thomas' testimony as to the location of the gate key and the physical layout on the Clayton farm; together with the scraps of tin, the canceled checks, the empty jugs found near the still site, and the still site itself with old mash in it, on Clayton's farm, as testified by Sheriff Rapert, was sufficient to corroborate the testimony of Thomas and Cowan and to sustain the conviction.

We find no merit in appellant's second point. Certainly we agree that the jury desired that Mr. Clayton be given a suspended sentence but this court has no au-

thority to render such judgment as we might have rendered had we been sitting as trial judges. Neither was the trial judge under any duty or legal obligation to follow the recommendation of the jury as to whether the sentence they imposed on a verdict of guilty should be carried out or suspended. This was made very clear to the jury before the verdict of guilty was rendered and the penalty was assessed by the jury. The question of guilt or innocence is a question of fact for the jury and a jury may render a general verdict as provided in Ark. Stat. Ann. § 43-2145 (Repl. 1964), or a special verdict as provided in § 43-2146. The court alone has authority to postpone the pronouncement of a sentence under Ark. Stat. Ann. § 43-2324 (Repl. 1964) or suspend the execution of a sentence under § 43-2326; and the exercise of the court's authority under either section addresses itself to the sound discretion of the court. *Suit* v. *State*, 212 Ark. 584, 207 S. W. 2d 315.

Finding no error, the judgment of the trial court is affirmed.

GEORGE ROSE SMITH, J., dissents.