## Earl Ray GARDNER *v.* STATE of Arkansas

CR 77-196                                      569 S.W. 2d 74

### Opinion delivered June 26, 1978
### (In Banc)
[Rehearing denied September 5, 1978]

740

744

*Lesher & Franks,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jesse L. Kearney,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Earl Ray Garnder was found guilty of the crime of rape in violation of Ark. Stat. Ann. § 41-1803 (Repl. 1977) and sentenced to five years imprisonment. He asserts the following points for reversal:

I

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT.

II

THE TRIAL COURT ERRED IN DENYING

THE DEFENDANT'S MOTION TO SUPPRESS THE CONFESSION.

## III

THE TRIAL COURT ERRED IN REFUSING TO DISQUALIFY THE DEPUTY PROSECUTING ATTORNEY RESULTING IN A DENIAL OF THE DEFENDANT'S RIGHT OF CONFRONTATION OF ALL WITNESSES.

## IV

THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION THAT THE JURY HEAR THE ENTIRE TAPE OF THE DEFENDANT'S ALLEGED CONFESSION RATHER THAN A PORTION OF SAID TAPE AFTER THE JURY HAD BEEN RETIRED FOR THEIR DELIBERATION.

## V

THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT IT COULD RECOMMEND A SUSPENDED SENTENCE.

## VI

THE COURT ERRED IN ALLOWING THE TAPED STATEMENT OF THE DEFENDANT TO BE PLAYED AND ADMITTED INTO EVIDENCE OVER THE TIMELY OBJECTION OF DEFENDANT AS THERE WAS NOT A PROPER FOUNDATION LAID FOR ADMISSION OF SAID TAPE.

## VII

THE COURT ERRED IN FAILING TO REVIEW THE TAPED INTERVIEW OF DEFENDANT IN CAMERA AFTER TIMELY REQUEST BY THE DEFENDANT.

I

Appellant's argument on this point is directed to one issue only, i.e., that the state failed to prove beyond a reasonable doubt that all the elements of the crime took place in the State of Arkansas. He argues that, assuming that evidence of penetration was sufficient, there is no evidence that it took place in the State of Arkansas.

Although Ark. Stat. Ann. § 41-110 (Repl. 1977) provides that jurisdiction must be proved beyond a reasonable doubt, we are not to decide whether there is a reasonable doubt about the matter. Of course, the requirement for conviction by a jury is that it find the accused guilty beyond a reasonable doubt. Such a requirement, however, does not mean that, on appellate review, the reviewing court must also find that the evidence eliminates reasonable doubt. The test, on appeal, is whether there is any substantial evidence to support the findings of the jury, and we do not disturb a finding on a fact issue unless there is no substantial evidence to support it. *Dennison* v. *Mobley,* 257 Ark. 216, 515 S.W. 2d 215. There is no logical reason why a more stringent test of evidence should be applied on appellate review to one element of the overall fact-finding than to the overall question of guilt. Therefore, review of the evidence on the jurisdictional question does not require that we be persuaded beyond a reasonable doubt or that we find that a preponderance of the evidence supports the finding on jurisdiction. We only determine whether there is sub-stantial evidence to support the finding.

The state is not required to prove jurisdiction unless evidence is admitted that affirmatively shows that the court lacks jurisdiction. Ark. Stat. Ann. § 41-110 (2) (Repl. 1977). The commentary to this subsection eliminates any argument that lack of proof on behalf of the state is equivalent to an affirmative showing. In other words, before the state is called upon to offer any evidence on the question of jurisdiction, there must be positive evidence that the offense occurred outside the jurisdiction of the court.

In this case, we might be justified in saying that there is no positive evidence that this alleged offense occurred outside

Arkansas (i.e., in Texas). There is substantial evidence that it occurred in Arkansas. There was evidence that the rape occurred while Gardner and the alleged victim, a 16 year old girl named Sanders, were backseat passengers in Gardner's automobile, which was being driven by Lynn Sullivan and in which Finis "Bubba" Toomer was then a frontseat passenger. The automobile had been driven from the victim's home near Foreman, Arkansas, to Idabel, Oklahoma. There, according to Miss Sanders, Gardner, who had identified himself to her as Earl Jones, got in the back seat with her and Toomer, who had been in the back seat, then got in the front seat. From Idabel, the party apparently went into Texas, when the driver missed a turn that would have taken them into Arkansas from Oklahoma. Sanders testified that, along the way, the automobile was stopped and Toomer and Gardner pulled off Sanders' blue jeans and underpants and Gardner took his pants off. Then, according to her, Gardner got back into the back seat of the car and performed the acts constituting the rape. She did not know where they were at this time, but could see fields, wooded areas and a fence along the highway.

Lynn Sullivan, who was a student at Foreman High School, decided to go home while they were in Idabel. He was then driving and said he had intended to return to Foreman by going through Hayworth and Tom, Oklahoma, but missed a turn. He stated that he stopped the vehicle on a little road just outside of Foreman near the residence of David Walker, in Little River County, Arkansas. According to Sullivan, he got out of the car and saw Miss Sanders in the back seat with her pants off and Gardner on top of her with his body moving as if they were having sexual intercourse. He said that the group remained at this point for some 30 minutes after they stopped. Sullivan said that he had lived for eight years in the area in which the Walker house was located.

The prosecutrix testified that while Gardner was on top of her in the back seat of the car with his pants off, he tried to put his penis in her, and that it "went in but not far" and that although he was unable to have an erection sufficient to complete his entry, he did have sufficient erection to "penetrate me." She was sure that he "entered her."

It is not essential to a prosecution in this state that all the elements of the crime charged take place in Arkansas. It has been said that it is generally accepted that if the requisite elements of the crime are committed in different jurisdictions, any state in which an essential part of the crime is committed may take jurisdiction. *State* v. *Scofield*, 7 Ariz. App. 307, 438 P. 2d 776 (1968). Carnal knowledge of the victim is an essential element of the crime of rape by sexual intercourse. *Kitchen* v. *State*, 61 Okla. Cr. App. 435, 69 P. 2d 411. See also, *State* v. *Lamb*, 251 Ark. 999, 476 S.W. 2d 7. To say the least, a state has jurisdiction of a crime consummated within its borders. *State* v. *Scofield*, supra. Cf. *Mortensen* v. *State*, 214 Ark. 528, 217 S.W. 2d 325; *Cousins* v. *State*, 202 Ark. 500, 151 S.W. 2d 658. The crime of rape of a female by a male by sexual intercourse is consummated by his having carnal knowledge of the female. *Miller* v. *State*, 65 Okla. Cr. App. 26, 82 P. 2d 317 (1938). See also, *Reed* v. *State*, 175 Ark. 1170, 299 S.W. 757; *Kitchen* v. *State*, supra. The carnal knowledge required is a res in re, but to no particular depth. *Poe* v. *State*, 95 Ark. 172, 129 S.W. 292; *McDonald* v. *State*, 225 Ark. 38, 279 S.W. 2d 44. The penetration of the body of the victim need not be to any particular depth, so long as there is an entry of the labia by the male organ. *Poe* v. *State*, supra. It may be partial and slight. *Hunt* v. *State*, 114 Ark. 239, 169 S.W. 773, LRA 1915 B 131, Ann. Cas. 1916 D 533. Proof of the slightest penetration is sufficient. *Scott* v. *State*, 251 Ark. 918, 475 S.W. 2d 699. See also, *Cabe* v. *State*, 182 Ark. 49, 30 S.W. 2d 855. This element is usually described as penetration and is held to be sufficient not only to constitute the crime, but also to complete it. *Hunt* v. *State*, supra; *Kitchen* v. *State*, supra; *Miller* v. *State*, supra. See also, *Poe* v. *State*, supra; *People* v. *Oatis*, 74 Ill. App. 2d 103, 220 N.E. 2d 71. It is not necessary that penetration be proved by visual observation. It, like other facts, may be proved by circumstantial evidence. *Whitmore* v. *State*, 263 Ark. 419, 565 S.W. 2d 133; *Needham* v. *State*, 215 Ark. 935, 224 S.W. 2d 785.

The testimony of the prosecutrix and that of Sullivan were substantial evidence to support the trial court's finding on the jurisdictional question. See *Whitmore* v. *State*, supra.

Appellant contends, however, that Lynn Sullivan was an accomplice, as a matter of law, and that his testimony on the

jurisdictional question was not corroborated. Our rule on corroboration of an accomplice is based on Ark. Stat. Ann. § 43-2116 (Repl. 1977). The statute only requires corroborating evidence which tends in some degree to connect the accused with the crime. *Underwood v. State,* 205 Ark. 864, 171 S.W. 2d 304; *Andrews v. State,* 225 Ark. 353, 282 S.W. 2d 592; *Bennett v. State,* 201 Ark. 237, 144 S.W. 2d 476, 131 ALR 908; *Shipp v. State,* 241 Ark. 120, 406 S.W. 2d 361. Evidence tending to establish the guilt of the defendant is all the law requires. *Stout v. State,* 164 Ark. 553, 262 S.W. 641. It does not have to be sufficient of itself, when considered wholly apart from the testimony of the accomplice, to convict the accused of the crime charged. *Andrews v. State,* supra; *Bennett v. State,* supra; *Underwood v. State,* supra; *Lauderdale v. State,* 233 Ark. 96, 343 S.W. 2d 422; *Anderson v. State,* 256 Ark. 912, 511 S.W. 2d 151; *Breed v. State,* 198 Ark. 1004, 132.S.W. 2d 386. See also, *Austin v. State,* 254 Ark. 496, 494 S.W. 2d 472; *Stout v. State,* supra.

The corroborating evidence must relate to material facts which to go the "identity of defendant in connection with the crime." *Vaughn v. State,* 58 Ark. 353, 24 S.W. 885. If the accomplice's testimony is corroborated on those facts about which he testified going to "the identity of the defendant in connection with the crime," the evidence is sufficient. *London v. State,* 204 Ark. 189, 161 S.W. 2d 207; *Vaughn v. State,* supra. The corroboration need only be of a character and quality which tends to prove defendant's guilt by connecting him with the crime. *Haskins v. State,* 148 Ark. 351, 230 S.W. 5. The sufficiency of the corroborating evidence, if it tends to connect the accused with the crime, is a question for the jury. *Ahart v. State,* 200 Ark. 1082, 143 S.W. 2d 23. The statute is directed to proof of the offense, and not to proof of jurisdictional facts.

## II

Appellant argues that a confession made by him should have been suppressed on his motion. He takes the position that the confession was the result of custodial interrogation during which he was assured by the interrogating officers that the statement could be withdrawn at any time after he had employed an attorney and that the statement was in-

duced by a promise that, upon appellant's coming to Ashdown from Oklahoma, he would be given an opportunity for a polygraph examination. He argues that the state's witnesses, including the deputy prosecuting attorney, were untruthful and that the statement was extracted by, or made under the influence of, promises of benefits, express or implied.

We are unable to say that the finding of the trial court was clearly against the preponderance of the evidence, as we must before we can reverse the trial court's holding. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515. Where the holding depends upon credibility of the witnesses, we must defer to the superior position of the trial court. *Whitmore* v. *State*, supra. The questions raised by appellant pertain to issues which could only have been decided on the basis of credibility.

At the Denno hearing on the motion, appellant and his father, Gulia Ray (Gus) Gardner, both of Duncan, Oklahoma, testified on behalf of appellant. They came to Ashdown to the sheriff's office on November 29, 1976, knowing of the nature of the charges against appellant. They met Sheriff Marlin Surber and Joe White, the investigator for the prosecuting attorney's office, who arrived at the sheriff's office around 11:00 a.m. Gus Gardner testified that he received an affirmative response when he asked White whether a statement by Earl, if he should give one, would be used in court. This witness said that, when he said to the investigator, "Well, we might not want to give that, we came to take a lie detector test," White said that it didn't matter, the statement could be withdrawn and added that if the father chose to get an attorney later, the statement could be withdrawn and not used in court. The elder Gardner said that if he had not been so advised, he would not have permitted his son, who "looked up" to him for advice, to give a statement to anyone. He said nothing about Sheriff Surber's participation in that conversation.

Earl Gardner testified that the only conversation with Sheriff Surber about use in court of any statement he might make took place between Sheriff Surber and his father. He stated on direct examination that he went ahead and gave the

statement the state proposed to use in evidence because, although the sheriff said the statement could be used in court, the sheriff responded to his father's statement that he did not want his son to give a statement that could incriminate him without a lawyer by saying that this was irrelevant, because he could hire a lawyer and have the statement withdrawn as evidence. On cross-examination, he said that he was mistaken in attributing the statements to Sheriff Surber and that they had been made by White. Appellant admitted that thereafter, and before he made any statement, the officers advised him that he had a right to a lawyer before any questions were asked if he wanted one, and that if he made a statement it could and would be used against him in court.

Joe White testified that he advised appellant that anything he said could be used against him in court; that he had a right to a lawyer before and during questioning, that if he could not afford a lawyer, one would be appointed for him by the court before questioning if he desired; that, if he decided to answer questions, he would have the right to stop answering at any time; and that he had a right to waive his right to counsel and the right to remain silent and answer questions or make a statement without consulting a lawyer if he desired. He said that, in response to separate questions directed to appellant about each such right, appellant answered that he understood each. White testified that he did not remember any reference to an attorney by either appellant or his father. He denied every having said that a statement could be stricken if an attorney was employed. He said that, after his conversation with appellant, and a statement had been given, appellant's father asked if he should get a lawyer. White said that he then advised the father to do so.

Sheriff Surber corroborated White's testimony about the advice given appellant as to his rights and about appellant's acknowledging his understanding of them. He denied any knowledge of any conversation prior to the statement with reference to hiring an attorney. He denied that he had ever told Mr. Gardner that he could employ a lawyer and any statement by appellant could not be used against him in court.

Gus Gardner testified that he brought his son to

Ashdown with the understanding that he was to have a polygraph examination and that the arrangements had been made through Eric Bishop, the Deputy Prosecuting Attorney for Little River County, during a telephone conversation on Sunday, the day before the statement was made. He said that he had asked Bishop if appellant came there and took a lie detector test and passed it whether that would clear him of the charge and that Bishop answered in the affirmative. Gus Gardner said that the only purpose for coming to Ashdown was for a polygraph test, that he had been assured that the matter could be concluded in one day, and that Bishop had told him that the sheriff would have to arrange for the test. He stated that as soon as Sheriff Surber arrived at the sheriff's office on Monday, he told Surber of his conversation with Bishop and that they wanted to get the test set up as quickly as possible, get the matter resolved and get back home. According to Gus Gardner, the sheriff agreed to set up the test and to call the polygraph operator in Little Rock, saying that it was a "good hour's drive" to Little Rock, or maybe more, and that they would have to be in Little Rock by 1:00 p.m. He said that, after Surber had assured him that the test was scheduled, he told the sheriff, when the officer inquired, that he did not care if the officers talked to his son, but that he would like to get the polygraph taken as soon as possible. Gus Gardner testified that he told White that they needed to get to Little Rock for this lie detector test as soon as White arrived and asked Earl to come into a room where White had set up a tape recorder. Earl Gardner testified that he came to Ashdown under the impression that he was going to take a lie detector test. At the trial, he testified that there was an understanding that "we" were to have this interview before "we" went and took the polygraph examination.

Eric Bishop testified that he had no recollection of a conversation with Gus Gardner about a polygraph and that he was not a party to, or aware of, a conspiracy to trick appellant into coming to the sheriff's office so a statement could be taken from him. Gus Gardner said that Bishop was not telling the truth.

Sheriff Surber said that he did not advise the elder Gardner that he had caused a polygraph test to be set up in

Little Rock and that he needed to be there by 1:00 p.m. any day, and denied that he ever said that it would take about an hour to drive to Little Rock. Actually, according to Surber, it would take 1½ to 2 hours driving at high speed and 2½ hours if the speed limit was observed. He said that the possibility of a polygraph test had been discussed, but that he did not arrange for one to be made in Little Rock.

Joe White remembered that there were discussions about a polygraph examination. He said that appellant said, while being interviewed by White, that he wanted to take a polygraph examination, but that he did not recall discussing it with appellant prior to the interview and that he did not recall appellant's having said that his reason for coming to Ashdown was to take a polygraph test. He admitted that when appellant expressed a desire to take a polygraph test, he told appellant where they would have to go, that going was a burden and an expense, and if one wasn't telling the truth, he wouldn't pass the test.

After this testimony, the motion to suppress was denied. The statement, recorded on tape, was never played during the suppression hearing and there is no indication that the trial judge ever heard it until it was played during the trial. During the trial, objections were made to the playing of the tape on other grounds and appellant moved to suppress it on the ground that a proper chain of custody had not been shown and that it was prejudicial because its content was not reduced to writing so certain questions could be deleted. Appellant also moved that all testimony regarding the voluntariness of the statement be stricken after the tape had been played before the jury, but no objection was then made to the introduction of the statement recorded on tape on the ground that it was involuntary. No motion was made to strike the statement on the ground that it was involuntary. Under these circumstances, the trial court cannot be held to have erred in ruling on the admissibility of this evidence on the basis of evidence adduced after its ruling was made. *Whitmore* v. *State,* supra.

During his testimony at the trial, White admitted that he had a conversation with Gus Gardner prior to appellant's waiver of his rights and that both father and son were very

cooperative. White also testified at this time, that he had told appellant that before any polygraph examiner could tell whether he was telling the truth, he was going to have to say something. He also said that appellant gave his version of what had happened on the night in question, after having previously indicated that he wanted to take a polygraph examination. He also said that before he commenced his interview of appellant the senior Gardner had said that he wanted appellant to have a polygraph test. White said that, after the interview was complete, the Gardners indicated that they did not want a polygraph examination.

The tape revealed that, at the conclusion of Gardner's statement of his third version of the events giving rise to the charge, Sheriff Surber had stated that appellant was wasting his father's time "wanting to go take a polygraph on the tale he is telling now" and, addressing appellant, "Your dad is here to help you. I think it is a waste of time."

Only by saying that the testimony of the officers was not credible could we say that the testimony of the Gardners, the two most interested witnesses, preponderated over that on behalf of the state. This we cannot do.

It is quite clear that appellant and his father both understood the explanation of appellant's rights that included advice that anything he said could be used against him in court, that he was entitled to have an attorney present during the questioning and to have an attorney appointed by the court if he could not afford to employ one and that he could stop the questioning at any time, if he chose to answer questions without having counsel. It is also clear that this advice was given after the conversation the Gardners say took place about the withdrawal of the statement — a conversation that the officers say never took place.

It is extremely difficult to comprehend appellant's arguments about the polygraph examination. The only basis for saying that the interrogation of appellant by White (probably assisted by Surber) was involuntary, turns upon the factual question pertaining to the alleged agreement that the statement could be withdrawn. Appellant urges that we play the tapes so that we may judge by the tone of White's

voice and his language whether White was attempting to convince appellant that it was useless for him to take a polygraph test and that he could not pass the polygraph. White's language was abstracted by appellant. There were no threats in his words. Telling one that, if he was not telling the truth, he would not pass the test is not a threat. *Commonwealth* v. *Hipple*, 333 Pa. 33, 3 A. 2d 353 (1939). Neither is telling one who is making a statement that he has not told the truth, particularly when he is told that the basis of that opinion is the fact that the similar stories of the victim and the two other boys along were unlike the one he is telling, but that the interrogator could only ask him to tell the truth and would not tell him what to say or tell him what others had said and then let him confirm their version. See *Commonwealth* v. *Jones*, 341 Pa. 541, 19 A. 2d 389 (1941). Any idea of threatening would be dispelled by White's recorded statement that appellant knew the truth and it did not matter to White whether appellant got his business straight or not. The tape also discloses that appellant had a discussion with his father and then admitted that he had previously omitted some things before giving his last version of the events in question.

We are not aware of any constitutional prohibition against an interrogator trying to persuade an accused to tell the truth or to answer questions so long as there is no questioning after the accused elects to remain silent and there is no coercion or promise of leniency or reward for answering questions or making a statement, even though there may be misrepresentations of fact made by the interrogator, so long as the means employed are not calculated to procure an untrue statement and the confession is otherwise freely and voluntarily made with an understanding by the accused of his constitutional rights. *Tucker* v. *State*, 261 Ark. 505, 549 S.W. 2d 285. Persistent questioning based upon the interrogator's assumption of the accused's guilt will not make a resulting confession involuntary. *Greenwood* v. *State*, 107 Ark. 568, 156 S.W. 427.

Appellant was 18 years of age; he was a high school graduate; he admitted that he understood all the words contained in the waiver of rights he signed; he had the benefit of parental advice at some time during the interrogation; the father and son both knew exactly what the accusation was;

and the officer declined to narrate his version of the crime and there is no evidence that he misrepresented any fact to appellant. There is even a valid question about the interrogation being custodial. Even appellant admits that he did not consider himself to be under arrest until after his statement was concluded. In every respect there is a far stronger showing of voluntariness than there was in *Tucker,* where we upheld the trial court's holding that the confession was voluntary.

Appellant seems to be attempting to equate the disputed promise of a polygraph examination with a promise of a benefit in order to extort a confession, citing *Freeman* v. *State,* 258 Ark. 617, 527 S.W. 2d 909. In *Freeman,* we found that the accused was justified in feeling that there was an implied promise of leniency in the prosecuting attorney's statement that, if the accused in that murder case had committed a crime, it was probably one that would not result in more than 21 years' incarceration. Even if there was a promise of a lie detector test, it was not an implied promise of leniency. The results of the test would not have been admissible in evidence. 29 Am. Jur. 2d 923, Evidence, § 831; 22A CJS 525, Criminal Law, § 645 (2). Cf. *Smith* v. *State,* 240 Ark. 771, 402 S.W. 2d 412, cert. den. 385 U.S. 980, 87 S. Ct. 528, 17 L. Ed. 2d 442. But it is only the result of the test that is inadmissible. Statements made prior to, and in preparation for, a polygraph test, which the accused has voluntarily agreed to take, would not be involuntary for that reason, if otherwise voluntary and the fact that the statements were so made would only be one factor to be considered on the question of voluntariness. *Tanner* v. *State,* 259 Ark. 243, 532 S.W. 2d 168; *People* v. *McHenry,* 204 Cal. App. 2d 764, 22 Cal. Rptr. 621 (1962). Incriminating statements and admissions freely and voluntarily made in anticipation of, during, and subsequent to, or as a result of, or interrogation with, a polygraph test or examination, to which the accused voluntarily submits, are admissible in evidence, if they are not otherwise involuntary. *Roberts* v. *State,* 195 So. 2d 257 (Fla. App., 1967); *Johnson* v. *Florida,* 166 So. 2d 798 (Fla. App., 1964); *Gasway* v. *State,* 157 Tex. Cr. App. 647, 248 S.W. 2d 942 (1952); *Webb* v. *State,* 163 Tex. Cr. App. 392, 291 S.W. 2d 331 (1956); *Commonwealth* v. *Hipple,* supra; *State* v. *Traub,* 150 Conn. 169, 187 A. 2d 230 (1962), vacated 374 U.S. 493, 83 S. Ct. 1899, 10 L. Ed. 2d

1048, on remand 151 Conn. 246, 196 A. 2d 755, cert. den. 377 U.S. 960, 84 S. Ct. 1637, 12 L. Ed. 2d 503.

## III

Appellant contends that the trial court erred in denying its motion to disqualify Deputy Prosecuting Attorney Bishop from further participation in the case after he had testified during the Denno hearing. The motion was made just after the circuit judge had denied appellant's motion to suppress. Ultimately it was grounded on the fact that appellant desired to have the benefit of the testimony of Bishop. The gist of appellant's argument is that he was deprived of the right to use Bishop as a corroborating witness during the trial on the question of voluntariness of the incriminating statement in connection with the alleged promise of a polygraph examination of appellant. The prosecuting attorney stated that he did not plan to call Bishop as a witness during the trial. The trial court ruled that he would not permit the state to call Bishop as a witness, but that appellant was not precluded from calling him. The trial court correctly held that appellant could call Bishop if he desired to do so. The rule against a lawyer acting both as an advocate and a witness was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel. *McCoy Farms, Inc.* v. *J & M McKee*, 263 Ark. 20, 563 S.W. 2d 409 (1978). Appellant did not attempt to call Bishop as a witness, even after the court held that he could if he desired to do so. There was no error on this ground.

## IV

Appellant argues that the trial court erred in replaying only that portion of his taped statement that the jury asked to hear after its deliberations had commenced. We are handicapped in properly evaluating this contention because the proceedings at that point are not abstracted. The jury had heard the entire tape during the trial. It seems clear that the jury asked only for a particular portion of the taped statement. The state points out that at the time this request was made, the jury advised the judge that it had reached a verdict as to appellant's guilt, but that it was having difficulties as to the punishment and desired to hear this portion of the tape in

order to assist it in fixing punishment. The jury heard this portion, which appears to have been that part in which appellant was supplying details he said he had previously omitted. During that part he told of laying the girl down on the back seat; placing his hand on her throat; putting her hair in the window, with Toomer's assistance, to keep her from sliding down in the seat; the girl's protesting and crying; his making motions with his pants down and his penis out, as if he were having intercourse, trying to effect an erection, and penetrating her but quitting when he was unable to attain an erection. It is true that earlier in the recorded statement appellant had denied his guilt, and had denied that he had ever penetrated the alleged victim.

The procedural statutes and rules do not expressly cover this exact situation. The closest approach to this matter is Ark. Stat. Ann. §§ 43-2138 and 43-2139 (Repl. 1977). The former relates to jurors taking papers introduced in evidence into the jury room during deliberations. We have considered that the trial court has some discretion in permitting exhibits, and even one of several exhibits, to be taken into the jury room during deliberations. See *Nathan* v. *State,* 235 Ark. 704, 361 S.W. 2d 637; *Ford* v. *State,* 220 Ark. 517, 248 S.W. 2d 696; *Holub* v. *State,* 130 Ark. 245, 197 S.W. 277; *Harshaw* v. *State,* 94 Ark. 343, 127 S.W. 745. Technically, appellant's statement, on the record of his interview with White, was introduced as an exhibit to White's testimony. Ark. Stat. Ann. § 43-2139 requires that, if there be disagreement among the jurors as to any part of the *evidence,* the information required must be given in the presence of, or after notice to, the counsel of the parties. We have held this statute to be mandatory, at least in some respects. *Golf* v. *State,* 261 Ark. 885, 552 S.W. 2d 236; *Andrews* v. *State,* 251 Ark. 279, 472 S.W. 2d 86. The recorded interview was certainly evidence.

Ordinarily, when the testimony of a witness is involved, and a statute similar to § 43-2139 does not govern, limitation of the repetition of the testimony to only that portion of the testimony requested by the jury during its deliberations is a matter resting in the discretion of the trial court. *Price* v. *State,* 437 P. 2d 330 (Alaska, 1968); *State* v. *Cari,* 163 Conn. 174, 303 A. 2d 7, 72 ALR 3d 608 (1972); *Commonwealth* v. *Peterman,* 430 Pa. 627, 224 A. 2d 723 (1968); *State* v. *Wolf,* 44 N.J. 176, 207

A. 2d 670 (1965); *State* v. *Ritchie,* 46 Wis. 2d 47, 174 N.W. 2d 504 (1970), cert. den. 400 U.S. 917, 91 S. Ct. 176, 27 L. Ed. 2d 156; *People* v. *Kasem,* 230 Mich. 278, 203 N.W. 135 (1925); *State* v. *Miller,* 2 Or. App. 353, 467 P. 2d 683 (1970).

In some jurisdictions having statutes virtually identical to § 43-2139, even when some provisions are held to be mandatory, as we have held, the granting of a jury's request for the reading of particular testimony and the extent of testimony to be repeated are within the discretion of the trial court. See, *Savage* v. *State,* 525 P. 2d 1219 (Okla. Cr. App., 1974); *Jones* v. *State,* 456 P. 2d 610 (Okla. Cr. App., 1969); *Smith* v. *State,* 509 P. 2d 1391 (Okla. Cr. App., 1973); *Fosberry* v. *State,* 509 P. 2d 911 (Okla. Cr. App., 1973). Even where the provision that the "information required" be given upon the jury's request is considered mandatory, it is not necessary that more be repeated than is sufficient to answer the particular inquiry or request of the jury. See, e.g., *People* v. *Carmical,* 258 Cal. App. 2d 103, 65 Cal. Rptr. 504 (1968). And in some jurisdictions where repeating the evidence at the jury's request is mandatory, it has been held that the trial judge has discretion as to the extent and circumstances in which the reading of testimony may be employed. See *La Monte* v. *State,* 145 So. 2d 889 (Fla. App., 1962); *Nelson* v. *State,* 148 Fla. 338, 4 So. 2d 375 (1941).

It is usually held, however, that restricting the repetition of evidence to that requested by the jury is not prejudicial error or an abuse of discretion. See *Stone* v. *U.S.,* 506 F. 2d 561 (8 Cir., 1974), cert. den. 420 U.S. 978, 95 S. Ct. 1405, 43 L. Ed. 2d 659; *State* v. *Favors,* 92 Ariz. 147, 375 P. 2d 260 (1962); *Kovash* v. *State,* 519 P. 2d 517 (Okla. Cr. App., 1974), cert. den. 419 U.S. 830, 95 S. Ct. 52, 42 L. Ed. 2d 55; *People* v. *Cathey,* 186 Cal. App. 2d 217, 8 Cal. Rptr. 694 (1960). See also, Annot. 50 ALR 2d 176, 192. In *State* v. *Wolf,* supra, the New Jersey Supreme Court stated that the jury's request should be granted in the absence of some unusual circumstance, that the jury should not be burdened with unnecessary reading they do not indicate a need to hear, and that it is not error to decline to read further portions of the evidence simply because a party demands it. It has been appropriately said that justice is more likely to be promoted than obstructed if the jury, at its request, is allowed to rehear

an electronic recording of specific testimony given at the trial. *Price v. State,* supra. It has also been held that the trial court's action should not be reversed in the absence of flagrant abuse of discretion. *State v. Wolfe,* 194 Kan. 697, 401 P. 2d 917 (1965).

The matter is treated in the American Bar Association Standards Relating to Trial by Jury (Approved Draft, 1968) in § 5.2, which provides that the jury's request should be granted, if reasonable, and that the court need not submit evidence beyond that specifically requested by the jury, but, in its discretion may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

It seems to us that the better approach is for the trial court to honor any request of a jury to hear specific evidence, in the absence of some compelling reason why it should not be granted, and that the action of the trial court in doing so should not be reversed in the absence of a manifest abuse of discretion. See *Bradshaw v. State,* 211 Ark. 189, 199 S.W. 2d 747; *Bennefield v. State,* 62 Ark. 365, 35 S.W. 790 (overruled on another point, *Tallman v. State,* 151 Ark. 108, 235 S.W. 389, dissenting opinion, 236 S.W. 281). The action of the trial court in limiting the evidence reread or repeated to that specifically requested or in denying the request of a defendant to reread or repeat other evidence should not be reversed in the absence of a clear abuse of discretion. We find no abuse of discretion.

Since it was obvious that the jury had already passed on the question of appellant's guilt, it also seems that the jury must have found the portion of appellant's statement they wanted to hear. In the light of these facts and the jury's assessment of the minimum punishment, it is manifest that appellant suffered no prejudice.

V

Appellant requested one instruction by which the jury would have been instructed that the court could, in its discretion, suspend the imposition of sentence or place the defendant on probation and the jury might by its verdict, recom-

mend suspension of all or any part of the sentence or probation. He also requested a rather lengthy instruction advising the jury of all the conditions the court might impose in case of suspension and in case of probation, the possible period of suspension or probation and the power of the court to modify such conditions. This instruction contained advice to the jury that its recommendations would be considered by the court but that the court was not bound thereby. The giving of either instruction would have been error.

We have heretofore taken the position that the matter of suspension of sentence is to be determined by the trial court and lies within its discretion and that no statement should be made by the trial court that would lead the jury to think that a suspended sentence would be granted. *Andrews v. State,* 225 Ark. 353, 282 S.W. 2d 592; *Tucker v. State,* 248 Ark. 979, 455 S.W. 2d 888; *Clayton v. State,* 247 Ark. 643, 447 S.W. 2d 319. We have said, however, that it was proper for the trial court to answer proper inquiries by the jury relating to the law governing recommendations of a suspended sentence. *Pendleton v. State,* 211 Ark. 1054, 204 S.W. 2d 559.

We have approved proper instructions on the role of the court and jury in matters pertaining to suspension of sentences where requests for information on the subject have been made by the jury. There is no reason why questions as to probation should be treated differently. We do not approve the giving of such instructions in the absence of a request by the jury.

Appellant argues that the procedures must be changed because of Ark. Stat. Ann. § 41-802 (Repl. 1977) relating to the role of the court and jury in fixing punishment. Sec. 41-802 (2) provides that the *court* shall fix punishment in certain enumerated cases, but no mention is made of suspension or probation of the offender. The section also provides that, if a defendant is found guilty, the jury shall fix punishment under Ark. Stat. Ann. §§ 41-801 — 41-1309 (Repl. 1977). Obviously, the word *court* in the context of these sections refers to the judge, and not the judge and jury, just as it does in the context of our previous decisions on the subject. It is obvious to us the word also means the same in Ark. Stat. Ann. §§ 41-

1201 — 41-1211 (Repl. 1977). Thus, appellant's argument must fail.

## VI

Appellant next contends that the taped statement of appellant was erroneously played for the jury and admitted into evidence over his objection that a proper foundation was not laid by showing a chain of custody that insured that the tape contained the same information as that originally recorded. Appellant urges a number of elements he now contends were essential to a proper foundation for the admission of this evidence which were not mentioned in any objection during the trial. We do not consider these questions because they were raised for the first time on appeal. The only objection raised in the trial court pertains to the chain of custody.

In *Webb* v. *State*, 253 Ark. 448, 486 S.W. 2d 684, we held that a tape recording was admissible when a deputy prosecuting attorney who made the recording testified without contradiction that the tape was an accurate recording of the interview. The cassette tape of the conversation between White and Gardner was in White's briefcase which was not locked. White said that he was "almost sure" that he took this tape with him to Nashville, where it was under lock and key in his office, or taken to his home. He said that on one night it had been in the possession of the prosecuting attorney, but that he had never left it with the sheriff. White said that he had listened to the tape at his home and had listened to it on the morning before he testified as he rode to Ashdown with the prosecuting attorney, that it was the same as the recorded interview, and had not been altered. There was no abuse of discretion in admitting this evidence.

Minor uncertainties in proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render evidence inadmissible as a matter of law. *Rogers* v. *State*, 258 Ark. 314, 524 S.W. 2d 227, cert. den. 423 U.S. 995, 96 S. Ct. 423, 46 L. Ed. 2d 369. The circumstance that the tapes were not kept under lock and key was merely a circumstance going to the weight to be given the evidence, not its admissibility. *Bedell* v. *State*, 260 Ark. 401, 541 S.W. 2d

297, cert. den. 430 U.S. 931, 97 S. Ct. 1552, 51 L. Ed. 2d 775. We do not say that the chain of custody of the tapes is insignificant, but when there is little likelihood that there has been any tampering with an exhibit, admission into evidence is not an abuse of discretion. Appellant's counsel stated that he was not accusing anyone of altering any tapes, but was saying that there was a possibility that they might have been altered.

The purpose of the rule requiring a chain of custody is to prevent the introduction of evidence which is not authentic. It is not necessary that the state eliminate every possibility of tampering, if the trial court is satisfied that in reasonable probability the evidence had not been tampered with. In such matters, the trial judge is accorded some discretion, in the absence of evidence indicating tampering with the evidence, and we will not reverse the trial judge's ruling unless we find an abuse of discretion. *Wickliffe* v. *State*, 258 Ark. 544, 527 S.W. 2d 640. We find none here.

## VII

The trial judge refused appellant's request that the trial judge review the tape recording in camera. Appellant complains that his attorney was forced to attempt to object to various portions of the interview while it was being played before the jury and that the court was compelled to instruct the jury to disregard certain portions of the tape and appellant moved for a mistrial. Appellant says that he was prejudiced by the necessity for his attorney having to repeatedly prevent the playing of the tape and the court's admonition did not correct this prejudice. Although appellant says that he was unable to properly exclude certain inflammatory remarks and expressions of opinion of guilt by the state's witness, he points out only one, i.e., the statement of White about his belief that appellant had not told the truth before appellant gave his second version of the events during the night of the alleged crime.

It seems that appellant's attorney had an opportunity to make a transcription of the tape and prepare objections before trial. The procedure followed permitted appellant's at-

torney to object before the portion of the tape he found objectionable was played and if the court sustained the objection, that portion was deleted. We are unable to find any prejudicial error in this procedure.

Since we find no reversible error, the judgment is affirmed.

HICKMAN, J., concurs.

BYRD, J., would suppress the confession.